[No. 2744.   Oct. 13, 1923.   Rehearing denied
Nov. 6, 1923.]

## STATE v. LOCKE (VILLAGE OF SPRINGER. Intervener)

### SYLLABUS BY THE COURT

1.   Property which is acquired by the state in its sovereign capacity is thereupon absolved and freed of a further liability for the taxes previously assessed against it, and a subsequent sale thereof for such taxes is void.

2.   By creating the trustees of the New Mexico Reform School as an involuntary corporation, and giving to it the power to sue and be sued, the state is not bound nor precluded by the judgment rendered in a suit against such corporation to which the state was not a party.

Appeal from District Court, Colfax County; Leib, Judge.

Suit by the State against Seon Locke, in which the Village of Springer intervened. From a judgment for the State, defendant Locke appeals. Affirmed.

### STATEMENT OF FACTS BY THE COURT

For convenience, the appellee, state of New Mexico, will be referred to throughout as the state, and the appellant, Seon Locke, as the defendant, and the appellee, village of Springer, as the intervener.

This suit was instituted by the state to restrain and enjoin the defendant from taking possession of certain premises described as lot 12 in block 13, in the village of Springer; to further restrain him from collecting a certain judgment in the sum of $75 and costs of suit, rendered and incurred in the case of Seon Locke v. The Trustees of the New Mexico Reform School, and to cancel a tax deed purporting to convey said lot to the defendant. The state charged in its complaint that on July 1, 1910, the Mills Ranch Resort Company, a corporation, owned such lot; that it conveyed the same to the plaintiff by warranty deed with full covenants; that such deed was dated July 1, 1910, and duly recorded on August 30, 1910, and that ever since the execution of such deed it has owned the premises in fee simple; that the only pretended right of pos-

session which the defendant ever had to such premises was derived from a tax deed which was issued to him under date of June 1, 1914, which purported to convey the same for nonpayment of the taxes due for the year 1909; that such sale was made long after the state acquired and became owner of the premises, and that, upon it becoming the property of the state, the unpaid taxes thereon became ipso facto extinguished, and the subsequent sale was therefore void. It was further charged that on February 3, 1915, the defendant instituted a suit in ejectment in the district court of Colfax county against the trustees of the reform school, wherein he sought to recover from said defendant the possession of the premises involved in this suit; that the defendant there interposed a plea in abatement, in which it contended that the suit was in fact one against the state, because of the fact that such reform school was a mere subdivision and creature of the state, created by it for the purpose of confining, instructing, and reforming its juvenile delinquents; that all of its property, including that in controversy, belonged to the state, and that the state could not be sued without its consent being first obtained; that a demurrer to such plea in abatement was sustained, whereupon the defendant declined to further plead, and judgment was rendered against said trustees for the possession of the premises in question, together with the sum of $75 and all costs of suit; that an appeal was taken from such judgment to this court, and that we affirmed the action of the lower court. The state further averred in its complaint that it was not a party to that case, and was not bound by the judgment rendered therein; that the said reform school being a mere subdivision of the state, it would be compelled to pay the judgment rendered in the former suit unless the defendant was restrained from taking steps to collect the same, and that, unless he was further restrained from taking possession of the premises, it would be deprived of their use and benefit. Copies of the plea in abatement and judgment in such former suit, together with copies of the tax deed to the defendant, and the deed from the Mills Ranch Re-

sort Company, were attached to the complaint. The state prayed that the tax deed be canceled; that the defendant be restrained from taking any action to collect the judgment and costs of the former case, and that he be further restrained from taking possession of such premises.

.The village of Springer intervened in the cause, setting forth that, after the suit was instituted and on June 19, 1919, the state, through its Governor, conveyed the premises in question to the said village in accordance with the provisions of.chapter 103, Laws 1919, and that it thereby became and ever since has been the owner of the same. It further pleaded, in practically the same language, the facts pleaded by the plaintiff, which we have previously stated, and prayed that it be adjudged to be the owner of said premises; that its title thereto be quieted; and that the tax deed referred to be canceled.

The defendant answered both the complaint and the intervention by alleging that the property was not conveyed to the state, but was in fact conveyed to the trustees of the reform school; that the deed, which upon its face ran to the state, specifically provided that it was "For the New Mexico Reform School, party of the second part"; that said reform school is a corporation existing under the laws of this state, for the purpose of caring for its juvenile delinquents; that said property was used solely for the purpose of conducting said school until the state attempted to convey it to the village of Springer; that said deed was taken in the name of the state of New Mexico, by reason of the mistaken belief of the members of the board of trustees of the reform school that it must be so taken; that the funds with which it was purchased belonged to said school, and that it was never intended that such property should ever be used for any other purpose. The suit instituted by Seon Locke against the trustees of the reform school, hereinbefore referred to, was pleaded at length with the contention that it is binding upon the state; as well as the intervener, who holds under a

deed from the state, because the judgment there rendered constituted res adjudicata of the matters now in controversy. He disclaimed any intention or purpose to collect the judgment and costs in such former suit.

To this answer the plaintiff and intervener filed a lengthy pleading denominated a motion to strike, which is in effect a demurrer which went to the life of the answer, and which was sustained. The defendant declined to plead further, and a decree was rendered in favor of the intervener as prayed for. The defendant seasonably perfected this appeal.

## BRIEFS CONDENSED

L. S. Wilson, of Raton, for appellant.

This matter was in litigation some years ago, and was decided by this court on another question in the case of Locke v. New Mexico Reform School, 23 N. M. 487; 169 Pac. 304.

The authorities are not very numerous but, so far as we have been able to find, they are one and all to the effect that the judgment against the Reform School works in estoppel against its principal, The State of New Mexico. The cases in point are: People v. Holladay, 102 Cal. 661; 36 Pac. 927.; People v. Holladay, 93 Cal. 241; 29 Pac. 54; 27 Am. St. Rep. 186; People v. Beaudry, 91 Cal. 213; 27 Pac. 610; People v. Linda Vista, In. Dist. 61 Pac. 86; Bernhard v. Hall, 194 Pac. (Cal.) 1040-1045; People v. Artesian S. & L. Co.. 150 Ill. App. 188; People v. Detroit G. & H. Co. (Mich.) 121 N. W. 814-819; State v. Rainey, 74 Mo. 229; Ward v. Field, 89 N. E. 731; 23 Cyc. 1278-1279; Gunter v. Atlantic Coast Line R. R. Co., 200 U. S. 273; 26 Sup. Ct. 252; 50 Law. Ed. 477; 24 Am. & Eng. Ency. of Law 2 Ed. 755; Elson v. Comstock, 150 Ill. 303; 37 N. E. 207; O'Connell v. Chicago Terminal Transfer Co. 194 Ill. 308; 56 N. E. 355; 23 Cyc. 1269; People v. Linda Vista (Id. Dist.) 128 Cal. 477; 61 Pac. 86; Holsworth overseer v. O'Chander, 49 Nebr. 44; 68 N. W. 334. See also: 36 Cyc. 915 and 919; Healy v. Deering, 231 Ill. 423; Williams v. Cole, 102 Pac. 870; 15 R. C. L. Sec. 504.

A judgment is final as to all matters that could have been presented in that action. 23 Cyc. 1288-1295.

Counsel says that the property in controversy belongs to the State of New Mexico. That is not the record. This matter comes here upon a judgment after the sustaining of a motion which is in effect a demurrer. It is the universal rule of law that a demurrer admits all the allegations in the pleading to which it is addressed, which are issuable, relevant and material, and which are well pleaded. 6 Standard Procedure 943; 33 Cyc. 333; 28 Cyc. 298-299.

The attention of the court is called to a decision of this court which seems to us to be absolutely in point and to be decisive of the present appeal. Florsheim v. Board of County Commissioners of Harding County (N. M.), 212 Pac. 451.

W. R. Holly, of Springer, for appellees.

Both the letter and the spirit of the statutes of New Mexico require that the title to the property owned for the purpose of the New Mexico Reform School and the other state institutions be vested in the State of New Mexico. Secs. 3551, 3568, 3606, 3573, 3594, and 3610 of the Compiled Laws of 1897; Secs. 2, 3, 4 and 6 of the Session Laws of 1903; Secs. 1 and 2 of Chap. 126 of the Session Laws of 1909. In 1919 the Legislature submitted to the people joint resolution No. 13 providing that a board of control of four members should govern all the state institutions, which was voted down. The case of Board of Regents of Kansas State Agricultural College v. Hamilton, 28 Kansas 376 is directly in point.

When the state acquired the property all taxes and the lien thereof became merged in the title in fee simple owned by the State. Gasaway v. City of Seattle, 100 Pac. 991; State v. Holcomb, 116 Pac. 251; Trustees v. City of Trenton, 30 N. J. Eq., 667; Foster v. City of Duluth, 140 Pac. 129.

The plaintiff in this case is not bound in any manner whatever by the decision in the case of Locke v. The

Trustees of the New Mexico Reform School, 169 Pac. 304. Tindall v. Wesley, 167 U. S. 204; Smith v. Doe et al., 111 N. Y. S. 525; Seitz v. Messerschmitt et al.. 102 N. Y. S. 732; United States v. Lee, 27 L. Ed.. 171; Sunningham ·v. Macon and Bruns. Ry. Co., 27 L. Ed. 992; Carr v. United States, 98 U. S. 433.

If the decision of this court in case, Locke v. The Trustees of the New Mexico Reform School, 169 Pac. 304, were a mere precedent, it would be binding on the court in this appeal. It is though much more than a precedent. It decided that the judgment in said case was not binding on the state. If though that decision were erroneous, it would bind this court on this appeal. If it were erroneous it could be departed from by this court in other appeals, but not in this appeal. It is the "Law of the Case" in this appeal. The doctrine of the law of the case applies on a second appeal in the same case. It also applies if the second appeal is in a different case if the subject matter is the same though the parties may be some different. Tally v. Ganahl. 90 Pac. 1049; Portland Trust Co. v. Coulter, 31 Pac. 280; McLendan v. McGlain, 60 Ga. 244; Parker v. Pomeroy, 2 Wis. 112. The doctrine is explained in the following cases: Neary v. Northern Pacific Ry. Co., 110 Pac. 226; Messinger v. Anderson, 225 U. S. 436; Peoples Lumber Co. v. Gillard, 90 Pac. 556.

The law is well settled that an appellee in a former appeal at whose instance the judgment was affirmed is bound by the affirmance. Caston v. Caston, 54 Miss. 512; Still v. Anderson, 63 Miss. 545.

The doctrine is well settled that a decision on a prior appeal is the law of the case even if erroneous. In fact, it is only when the former decision is erroneous that the doctrine becomes one of importance, because if the former decision were correct it would be followed as a precedent and it would not be necessary to apply the doctrine of the law of the case. The following cases all sustain this principle, many of them stating that a decision on a prior appeal will be followed, though "utterly wrong." Hambs v. Corbin, 34 Missouri Ap-

peals, 393-400; Haynes v. Meeks, 20 California, 288-310; Heller v. Daily, et al., (Ind.) 70 N. E. 812; Hall v. Blackman, et al., (Ind.) 75 N. E., 608; Roth Tool Company v. Champ Spring Company (Missouri) 123 S .W., 513-20; Jeffery et al., v. Osborn, 145 Wisconsin, 351-59; Bryan & Company v. Scurlock, (Iowa) 180 N. W. 684; Deake v. Huenkemeier (Illinois) 124 N. E. 381; City of New Albany v. Lyons, (Ind.), 118 N. E., 587; United States Annuity and Life Insurance Company v. Peak, (Arkansas) 195 S. W., 392; In Cowan et al., v. Pennsylvania Plate Glass Company, 41 Atlantic, 615, the supreme court of Pennsylvania said:

"Every question raised by this appeal was considered and decided in the case of Cowan v. Glass Company, 38 Atlantic, 1075, in which this appellant was represented by counsel and all that he now urges was fully heard and considered both in the court below and here."

See also: Sherman v. Port Huron Engine and Thresher Co., 82 N. W. 413; Torgerson v. Smith, 3 N. E. 866; Westerfied v. New York Life Ins. Co., 107 Pac. 699.

OPINION OF THE COURT

BRATTON, J. (after stating the facts as above). The validity of the tax deed presents the first question for our consideration. It is to be remembered that the taxes for which the premises were sold were levied for the year 1909; that the premises were acquired by the state during the year 1910, and that afterwards and on June 1, 1914, the tax deed was issued, which purported to convey the lot in question to the defendant. So that the narrow question is whether or not the acquisition of property by the state frees and relieves it of an existing liability for taxes then levied, due, and unpaid. Section 3 of article 8 of the Constitution, provides that all property of the state, as well as many other kinds and classes therein enumerated, shall be exempted from taxation. It is in this language:

"The property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all lat-

erals thereof, all church property, all property used for edu_
cational or charitable purposes, all cemeteries not used or
held for private or corporate profit and all bonds of the state
of New Mexico, and of the counties, municipalities and dis-
tricts thereof shall be exempt from taxation."

All exemptions granted from taxation proceed upon
the theory of public policy, but the public policy in-
volved is not always the same. For instance, the ex-
emption granted by the above-quoted constitutional
provision to church property, public libraries, educa-
tional and charitable institutions, and cemeteries not
used or held for private or corporate profit, proceeds
upon the theory of the public good accomplished by
them and of the peculiar benefits derived by the public
in general from their conduct. It is an act of grace
upon the part of the state, which emanates from such
considerations. The exemption granted to the property
of the United States is perhaps compulsory; that to
the state, all counties, towns, cities and school districts
arises from public policy, which repudiates, as being
utterly futile, the theory of the state taxing its own
property in order to produce the funds with which to
operate its own affairs. To tax it would merely re-
quire and render it necessary to levy new taxes to meet
the demand of those already laid; that the public
would thus be taxing itself to produce the money with
which to pay to itself the taxes previously assessed,
thereby benefiting no one except the officers employed
to collect and disburse such revenues, whose compen-
sation would merely serve to increase the burden of
this useless and idle ceremony. The object of taxing
property is to produce the revenues with which to
conduct the business of the state; it is entirely incon-
sistent with our theory of government for the property
of the state to be taxed, or sold for taxes, in order to
produce the money to be expended by the state. Such
a procedure is but taking the money out of one pocket
and putting it in the other. Another consideration,
which should not be overlooked, is that if public prop-
erty, that is to say, property owned by the state, is to
be burdened with a tax lien, the public might lose it
entirely through oversight or carelessness of its agents

in failing to pay the taxes when due, and allowing the same to be sold and the title to pass to third parties.

[1] And we think these unanswerable reasons for exempting the property of the state from the levy of taxes thereon lead to the conclusion that when property is acquired by the state in its sovereign capacity, it thereupon becomes absolved, freed, and relieved from any further liability for taxes previously assessed against it, and which are unpaid at the time it becomes so acquired that from the moment of its acquisition the power to enforce the lien is arrested or abated. The claim of the state for such taxes becomes merged in its ownership of the fee. To consider it further burdened with such lien, and to permit it to be subsequently sold for the payment thereof, results in the state selling its own property to pay itself. The claim of the state for unpaid taxes initiates the proceedings which subsequently, by complying with the required procedure, ripens into ownership by the purchaser of the tax title. Such a claim for unpaid taxes is therefore indispensable to acquiring such a title. In this instance, there was no claim for any taxes after the state acquired the property, so that the defendant purchased without the existence of such a claim. Our conclusion that property acquired by the state is automatically freed from further liability for taxes previously assessed against it is supported by the great weight of authority from other jurisdictions, as we shall proceed to demonstrate.

In Reid v. State, 74 Ind. 252, the facts were that the original owner of the land, Joseph Emisberger, who was an alien, died on January 10, 1860; that the land, by operation of law, at once escheated to the state; that it was afterwards sold for delinquent taxes for the years 1859, 1860, and 1861. It was there held that upon such land becoming the property of the state through the process of escheat, it was no longer subject to taxation, and that a subsequent sale thereof for the taxes, a part of which were assessed during the year previous to the death of the alien owner, was void. It is there said:

"Besides, the legal title to the lands became vested in the state by escheat, on the 10th day of January, 1860, by the death of the alien Joseph Emisberger, without inheritable blood. Any assessment of taxes upon the land, or its sale for delinquent taxes after that date, would be void as against the state."

In Gasaway v. City of Seattle, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68, the city acquired certain property for public purposes by condemnation proceedings. At the time such proceedings were prosecuted, and at the time the city acquired the premises, there had been levied certain taxes which were then due, delinquent, and unpaid. Gasaway claimed under a purchaser of the tax deed conveying the premises for such taxes and brought suit to quiet title. The city defended upon its title acquired by condemnation with the contention that the property was acquired by it free from such previously existing taxes. This contention was sustained by the Supreme Court of Washington. We quote from its decision:

"By complying with the statute, it took so much of the several tracts bought by respondent as the superior court had determined was necessary for the public use. The land, being taken for a strict, as contradistinguished from a quasi, public use, was discharged pro tanto of the tax lien. The property became public property. Public property is never taxed, and property possessed of that character is, under a statute like the one under consideration, of necessity freed of the burdens imposed on the individual."

In Smith v. City of Santa Monica, 162 Cal. 221, 121 Pac. 920, the city instituted condemnation proceedings during the year 1895 to acquire certain property for public use. The decree granting such property to the city was entered on December 20, 1897. Afterwards and during the year 1908, it was sold for the taxes assessed for the years 1894 and 1895. The plaintiff held under such tax deeds, and brought suit to quiet his title. The court decided adversely to him upon the theory that the city was a mere agency of the state, and that the tax loan was lost and merged in the title acquired by the city, and hence no title was vested under such tax deed. That court there said:

"The state does not tax the property of a municipality for state and county purposes, because this would be a taxation of its own property. For the same reason, when the property has come into the ownership of a municipal corporation, it will not attempt to enforce the tax by the sale of the property. The absurdity of its so doing would be apparent in the case where a county had acquired such property under the circumstances here present, and the state should sell it. To do what? To retain a portion of the tax in its own treasury, and to pay to the county a portion of the money derived from the sale of the county's own land. It may safely be said that when a municipal corporation acquires property under such circumstances the title which the state takes by the tax collector's deed is merged into the larger title which the municipality holds under the trusts, both for the public, as distinguished from the state, and also for the state, as the supreme sovereign, as well."

In Foster v. City of Duluth, 120 Minn. 484, 140 N. W. 129, 48 L. R. A. (N. S.) 707, the city purchased certain property, and constructed thereon an incinerator plant or crematory for the disposal of garbage. Foster claimed that under tax sale certificates issued for the taxes levied for the year 1905, and which were levied prior to the time the city purchased. It was held that the moment the property became public in character. it was no longer subject to the tax lien previously existing thereon. The rule applicable here was excellently stated by that court in this language:

"Does not the fact, conceding it to be a fact, that the lien for the 1905 taxes attached to the property before it becomes public property, give validity to the proceedings taken after the city acquired the title? That this would be so in the case of property which, after the lien attaches, becomes exempt because of its transfer to a church, charitable corporation, or to a corporation which pays a gross earnings tax, may be conceded. State v. Northwestern Telephone Exchange Co., 80 Minn. 17, 82 N. W. 1090; County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942. See 37 Cyc. p. 897, and cases cited in note. But the cases cited are not authority on the question here, because of the vital fact that this is public property, devoted to a public use, and that the proceedings to enforce payment of the taxes are against the state, or one of its municipal subdivisions. We think, logically and reasoning from these premises, that it must be held that all proceedings taken after the property became public property were void. notwithstanding that the taxes for the current year may have been a lien on the property before its transfer. It by no means follows, as counsel for plaintiff insists it does. that, because there was a valid lien; the proceedings to enforce

that lien were valid. Nor is it important here what becomes of the lien. We need not consider whether it still exists as an unenforceable lien, whether plaintiff is entitled to refundment, or whether the lien is merged in the fee title. All that is necessary to decide, and all that we do decide, is that all proceedings to assess the land for taxes, taken after it became public property, and all proceedings in attempting to enforce and collect the tax, were void. This decision is the only one that will prevent the disastrous result of property devoted to a public use being, through the carelessness of public officials, lost to the public on tax judgments and sales, and is, we think, in entire accord with the settled policy of the state that public property shall not be subject to taxation, or to the laws in regard to proceedings to enforce the collection of taxes."   ·

And in City of Laurel v. Weems, 100 Miss, 335, 56 South, 451, Ann. Cas. 1914A, 159, the complainant deraigned title by tax deed dated March 4, 1907, conveying the property for the nonpayment of the taxes assessed thereon for the previous year. The city had bought the property from private owners on March 20, 1906. The court declared in the following language the rule we are endeavoring to develop:

"In the case of a municipality, a governmental agency of the state, and itself maintained by taxation, and presumed by law to be exempt from taxation, it cannot be supposed that the Legislature intended that any further steps should be taken looking to the enforcement of the state's lien for taxes against property acquired by one of its own governmental agents, after the property is purchased by such agent. Such proceedings would not aid the effectuation of any governmental purpose, but would impair it. After the municipality purchased this lot, the taxing officers could not take any further steps looking to the collection of the tax, and the subsequent sale of the land for the taxes was a nullity. The purchaser at the sale got no title, because it was beyond the power of the officers to sell."

The property in question was freed and absolved from further liability for the taxes previously assessed against it, the moment it was acquired by the state. Prior to that time, the state merely held a lien against such property to secure the unpaid taxes so previously assessed, and this lien was merged into the ownership of the title in fee. That a lien, whether it be created by mortgage or otherwise, is merged into the title of the holder thereof the moment he acquires the fee to

the property covered by such lien, is a proposition of law too well settled to merit the citation of authority.

From what we have said it follows that the treasurer of Colfax county had no power, after the state acquired such property, to make a sale of the same, and the tax deed to the defendant was consequently void.

[2] The remaining question concerns the effect of the judgment rendered in the case in ejectment instituted by the defendant against the trustees of the New Mexico Reform School. It is contended by the defendant that such judgment constitutes res adjudicata of the matters involved here, and is binding upon the state, as well as the intervener, who holds under a deed from the state, because the state bore such a relation to the trustees of the reform school, and stood in such a position of privity with it concerning that litigation, that it is bound by the judgment rendered, although it was not a nominal party to the suit. It is contended that by the act creating the reform school as an involuntary corporation, which was chapter 2, Laws 1903, the then territory, now state, gave to it the power to sue and be sued. This right is derived from section 6, chapter 2, Laws 1903, now section 5109, Code 1915. And that after that subdivision of the state has exercised such delegated power by running the gauntlet with its adversary to an adverse conclusion, the state is bound and cannot be heard to afterwards complain. The right of the state to maintain a suit of this kind, with regard to this identical property, was expressly decided by this court upon the appeal of the ejectment case referred to. See Locke v. Trustees of the Reform School, 23 N. M. 487, 169 Pac. 304, wherein it was held that such suit could be maintained, and that the state was not bound by that judgment. This court, speaking through Justice Roberts, said:

"The action is in no sense against the state, and it is not bound by the judgment of the district court, but might litigate with appellee the question of its title to the premises in question. The action simply determines as between appellee and appellant the right of possession. While it is true appel-

lant's right of possession is dependent upon the title in the state assuming the plea in abatement to state the facts correctly, yet the adjudication of the question of the right of possession in this suit would not be binding upon the state should it elect to institute an action against appellee to quiet title to the premises."

The defendant recognizes the decision so rendered, but seeks to avoid the effect of it by saying that it was mere dictum and is therefore not controlling. With this contention, we are unable to agree.

The sole question involved in that case concerned the relation of the state to the reform school. In the course of the discussion upon the subject it was said that they were such separate entities and so disconnected and so separate from each other that the suit was not one against the state; that the state, by reason of such facts, would not even be bound by the judgment, but could afterwards maintain a separate suit to quiet title—just what it has done here. Manifestly, therefore, this subject was so closely related to the question there decided that the language which we have quoted cannot be said to be dictum. In following that case, and in reaching this conclusion upon this phase of the case, we desire to be understood as limiting our decision to the facts involved here, where we take into consideration the significant fact that at the time the suit in ejectment was tried, the state held the legal title to the lands involved, and that the reform school never held such title. We express no opinion concerning the effect of such a judgment upon the state where one of its subdivisions, which held the legal title to real estate, has lost such a case.

The judgment should therefore be affirmed.

PARKER, C. J., and BOTTS, J., concur.