(No. 5684. February 28, 1931.)

STATE on the Relation of E. M. HOOVER, Commissioner of Public Investments, Appellant and Cross-Respondent, v. COUNTY OF MINIDOKA, State of Idaho, a Body Corporate; E. T. HOLLENBECK et al., County Commissioners of Minidoka County et al., Respondents and Cross-Appellants.

[298 Pac. 366.]

W. D. Gillis, Attorney General, and S. E. Blaine, Harmon E. Hosier and Leon M. Fisk, Assistant Attorneys General, for Appellant and Cross-Respondent.

H. V. Creason, E. V. Larsen and Harlan D. Heist, for Respondents and Cross-Appellants.

McNAUGHTON, J.—This action was instituted by the state to quiet title to certain lands in Minidoka county, purchased by the state in foreclosing a school fund mortgage, and to require the County Commissioners to cancel and discharge certain tax liens appearing on the tax records of the county against the lands. The mortgage was foreclosed on the seventh day of September, 1929, and the premises were

sold and sheriff's certificate issued to the state on the 19th of October, 1929. This action was begun on the eighth day of September, 1930. Decree was entered on the fourth day of October, 1930.

The taxes involved were for the years 1925, 1926, 1927 and 1928 delinquent, and 1929 assessed but not delinquent at date of the foreclosure sale. It appears the state levies, amounting for said years to $82.68, have been paid by the county to the state.

The court by its decree concluded: 1. That the liens for taxes delinquent, and taxes assessed but not delinquent, should be canceled and discharged and title should be quieted in the state. 2. That all the taxes on the premises for the years mentioned were an obligation of the state of Idaho, payable through its proper agencies in the manner provided by law, but that the court has no jurisdiction to render a judgment thereon against the state.

The state has appealed from the second conclusion, and the county by cross-appeal has appealed from the first.

This court has held that tax liens for past taxes are unenforceable against lands owned by the state purchased upon foreclosure of these mortgages. (*State v. Reed,* 47 Ida. 131, 272 Pac. 1008, 1009.) This is the general rule in other jurisdictions. Idaho has a constitutional provision exempting property owned by the state from taxation. Some other states have similar constitutional provisions, notably California, Washington and North Dakota, wherein the constitutional exemption has been examined. But states without such constitutional exemption hold that owing to the sovereign character of the state such liens are unenforceable against it.

In examining the decisions on the subject, we find the courts of states having the constitutional exemption, though mentioning the exemption as the Idaho court has done in *State v. Reed, supra,* have been content in holding simply that the tax lien may not be enforced against the state. This has been so because in the litigation the property in-

volved has been owned and held by the state permanently for a permanent purpose or because the litigation only involved the claim of right to enforce a tax lien against the state. Such a decision will not suffice in this case because this is an action by the state to quiet its title to this property held by it primarily if not solely for the purpose of selling it. Here we are concerned with the effect and standing of liens for past taxes upon the title which the state may convey.

The question here is not entirely answered by our constitutional exemption of state property from taxation, but it is greatly simplified by that provision.

Mr. Cooley, in his work on Taxation, 4th ed., vol. 2, sec. 638, states the rule as follows:

"If there is no constitutional or statutory provision expressly exempting state and municipal property, it is taxable where not devoted to public uses, although it would not be taxable if devoted to public uses. The ultimate test is not municipal ownership, but public use. On the other hand, if such property is expressly exempted by the constitution or a statute, and there are no qualifying words used, the property is exempt regardless of its use."

In discussing the question of exemption of state property, acquired upon foreclosure of a school fund mortgage, this court, in *State v. Reed, supra,* said:

"Our constitution (art. VII, sec. 4) exempts 'The property of . . . . the state from taxation.' (C. S., sec. 3099, provides that 'The following property is exempt from taxation . . . . property belonging to this state. . . . . ' With respect to exemptions from taxation of state property there is, therefore, no distinction between property acquired through the foreclosure of a mortgage and that which may be said to be owned and held for purely governmental purposes. It is our conclusion, therefore, that when the state received the sheriff's deed on foreclosure further proceedings for the enforcement of the prior tax lien were without effect. The state was entitled to the injunction."

The supreme court of the United States, in *Van Brocklin v. Anderson,* 117 U. S. 151, 6 Sup. Ct. 670, 682, 29 L. ed. 845, has stated the rule as follows:

"General tax acts of a state are never, without the clearest words, held to include its own property or that of its municipal corporations, although not in terms exempted from taxation."

It would seem, property. exempt from taxation is generally held exempt from the mode or laws adopted for enforcing the collection of public or governmental revenue, including tax levies past or present, and the liens of any such which may have been provided in the general scheme of taxation. The courts generally make no distinction in considering the rights of taxation between past or present tax claims or charges. (*State v. Locke,* 29 N. M. 148, 30 A. L. R. 407, 219 Pac. 790; *Laurel v. Weems,* 100 Miss. 335, Ann. Cas. 1914A, 159, 56 So. 451; *Foster v. Duluth,* 120 Minn. 484, 140 N. W. 129, 48 L. R. A., N. S., 707; *Smith v. City of Santa Monica,* 162 Cal. 221, 121 Pac. 920; *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667.)

In *State v. Reed, supra,* this court said:

"Every reason that requires the exemption of the property of the public from taxes imposed after its acquisition not only justifies but necessitates the holding that while owned by the state no proceeding may be taken to enforce the lien of any tax theretofore imposed against it."

It is thought the only debatable question left undecided in this state, after the decision of *State v. Reed,* is whether or not there may be, in the case of state owned property such as this, a lien for taxes past due cut off by state ownership but nevertheless slumbering and which may revive and attach upon conveyance by the state.

Many courts have used expressions similar to the expression of this court quoted above. (*State v. Locke, supra; Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A., N. S., 68; *Smith v. City of Santa Monica, supra; Foster v. Duluth, supra; Laurel v. Weems, supra.*) But only one

that we have been able to find has directly held the lien will revive upon transfer by the state. (*State v. Burleigh County,* 55 N. D. 1, 212 N. W. 217, 232.) On petition for rehearing that court said:

"It is suggested that the rights of the county as the holder of the tax certificate should be more definitely determined and stated. In view of the fact that the action is one to quiet title, we deem it proper to fully define the rights of the county as a lienholder. We are of the opinion that the lien of the county is unenforceable during the time the property is owned by the state, and all remedy, including the acquisition of title by tax deed, is suspended.

"We are further of the opinion that the certificate of tax sale, in the absence of any subsequent legislation affecting it, continues to draw interest at the existing statutory rates. The rights of the county as thus defined may be asserted against a purchaser of the property from the state. The reasons supporting these conclusions having already been sufficiently stated in the original opinion, repetition is unnecessary."

North Dakota has a constitutional provision very like ours. In the North Dakota case the court held the land was not so owned by the state as to be within the constitutional exemption. The land involved in that case was taken in foreclosure of a farm loan from state funds, loaned by the Bank of North Dakota. The bank held the title as trustee for the state. The court distinguishes between activities of the state in its sovereign functions and its activities in banking ventures, and held the constitutional provision relates only to property held in the state's sovereign functions. After the decision of this court in *State v. Reed, supra,* the question as to whether lands procured by the state upon foreclosure of school fund mortgages come within the constitutional exemption in this state, is not open to debate. The constitutional exemption extends to such lands. If that question were not foreclosed by *State v. Reed,* it might be observed that the Idaho Constitution recognizes the

state function of administering the school fund to be a function enjoined upon the state as a sovereignty by the Constitution itself.

All the decisions recognize that the power of taxation is a sovereign power delegatory to local taxing districts to raise funds for one public purpose or another, but always in behalf of sovereignty for the public good. Only such taxes as distinguished from special assessments are involved herein.

In the absence of a constitutional provision therefor, the exemption of the state from taxation is generally put upon the ground that the sovereign cannot be so proceeded against by its taxing subdivisions, but the courts usually justify such condition by a discussion of the futility of taking money out of one pocket to put it into another (*People v. Doe G*, 1034, 36 Cal. 220; *State v. Locke, supra; Laurel v. Weems, supra*), or of collecting taxes with which to pay taxes (*Foster v. Duluth, supra; State v. Locke, supra*), or by the doctrine of merger of such liens into the title in the state. (*Smith v. City of Santa Monica, supra.*)

However, under a constitutional provision such as ours, such property is exempt from any charge of taxes either present or past. This upon the ground that the property itself is exempt, not merely that its owner, being sovereign, is beyond process.

For the courts to hold simply that owing to the sovereign character of the holder of the property the tax lien cannot be enforced, is not going to the vitals of the question as it arises in this case. We are compelled to go further in deciding the matter before us.

It is thought exemption means something more than that the lien is unenforceable against the state. This was pointed out by Judge Dietrich in *Clearwater Timber Co. v. Nez Perce County*, 155 Fed. 633, 637. The question in that case being whether or not property, title to which was in the United States on the second Monday in January, may upon

transfer become taxable during that year. In that case Judge Dietrich said:

"Under the laws of Idaho the property of a resident widow woman of a value of not in excess of $1,000 is exempt from taxation. Suppose that a widow woman with a home valued at $1,000, and having no other property, should sell and convey it during the month of June, would the property thereupon become assessable to the purchaser for the taxes for that year? If so, for the taxes for the entire year, or only for an aliquot part thereof? There is a provision in the Idaho statutes governing the assessment of transient stock for portions of the year, but my attention has not been called to any such provision relating to real estate. If it may be assessed to the purchaser for the entire year, what becomes of the widow's exemption? Whether or not the property so purchased can be burdened with the taxes for that year is a material consideration to the purchaser, and if, upon the consummation of the purchase, he must assume the burden of paying the taxes for that year, he will necessarily pay less for the property and the guaranteed exemption will thus be rendered worthless to the widow."

It was held in that case that property exempt on the second Monday of January was exempt throughout the tax year. This doctrine was followed by this court in *Winton Lumber Co. v. Shoshone County, ante,* p. 130, 294 Pac. 529.

One of the sovereign duties of Idaho, recognized, provided and enjoined by the Constitution, was the administration of the school fund arising from sale of the school endowment lands. The Constitution exempts state property from taxation. The state loans the school funds on real estate mortgages. The state owns lands taken on foreclosure of these mortgages and holds them for sale in behalf of these school funds. To hold that the state must sell lands so obtained subject to outstanding tax liens would destroy the benefits of that exemption. The state would receive, of course, a bid calculated upon a deduction of the taxes.

Nothing more. But, it is claimed by appellants, these taxes must be paid by the state out of its general fund, and our attention is called to section 3, article 9 of the Constitution, which provides as follows:

"The public school fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state in such a manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur."

Special emphasis is laid upon the last sentence. It is claimed that to cancel these taxes will result in a loss to the county funds, against which the state is bound to protect it.

As carrying out section 3, article 9 of the Constitution, C. S., sec. 2971, is called to our attention. This section provides as follows:

"The department of public investments is hereby authorized to pay any and all taxes and assessments that are assessed against and are liens upon, lands upon which the state has loaned money secured by mortgage, or upon which the state has acquired title through foreclosure proceedings, and upon which there are delinquent taxes, assessed previous to acquiring such title. Such amount of taxes and assessments shall be ascertained by the department of public investments, and a claim presented to the state board of examiners, and after the allowance of such claim the auditor shall draw his warrant for the amount of such claim."

Our attention is called also to chap. 107, Sess. Laws 1923, and to chap. 145, Sess. Laws 1929.

The act of 1923 appropriated $25,000 as a circulating fund known as the farm mortgage fund, out of which cer-

tain expenses accruing on account of state mortgage loans, including taxes on lands foreclosed, may be paid but providing reimbursement to the farm mortgage fund out of any proceeds received upon the sale of such lands.

It is true that an additional $30,000 was appropriated to this farm mortgage fund in 1929, but with provision for reimbursement to the fund as before. The 1929 act provides in part as follows:

"Sec. 2. All moneys paid out of the farm mortgage fund shall be a lien upon the lands and premises affected, or upon the lands and premises for whose benefit said moneys were paid out.

"Sec. 3. From and after the passage and approval of this act all moneys collected by the State either in mortgage foreclosure suits or by the redemption by any redemptioner, or from the sale of lands taken by the State on foreclosures and afterwards sold by the State, and all rentals realized by the State from said land either during the period of redemption or thereafter, to the extent of said moneys advanced by the State to pay delinquent taxes, water assessments, fire insurance premiums, and expenses incident to the foreclosure of mortgages on land and premises on which the State holds or has held mortgages, shall be placed in the farm mortgage fund by the State Treasurer, and where such moneys shall be collected in installments, all such collections as made shall be placed in the farm mortgage fund, until the sum or sums advanced by the State shall have been so received and apportioned."

It is claimed, by virtue of this constitutional provision and these acts of the legislature, that after purchase by the state upon foreclosure, the tax lien against the land must stand and be paid by the state; that the legislature has provided machinery and funds for that purpose.

In the instant case it does not appear that in order to protect the lien of the state's mortgage against a tax foreclosure by the county, if ever necessary to so do, it was necessary for the state to pay these delinquent taxes.

The above statutes do not make it the mandatory duty of the Land Board or the Commissioner of Public Investments as its successor, to pay such delinquent taxes; at most it only purports to authorize such action (6 C. J. 865), and make appropriations therefor.

Since the state may not be compelled to pay taxes on state property, it may not be required to pay taxes to have its title quieted, if it might be under the compulsion under certain circumstances not necessary to be considered here, to pay taxes to protect its lien before the acquirement of title, such is not this case. Therefore, these statutes do not aid respondents in this specific controversy. These statutes do not tend to aid the endowment funds because under the circumstances of this case no assistance is required.

When the state obtains complete unconditional title to lands pursuant to the foreclosure of school fund mortgages, the title is freed, by article 7, section 4, of the Constitution, from all past taxes and liens therefor, and all such liens on the tax records become *nil* and should be canceled.

It will be observed this case was tried before sheriff's deed was executed or due. We do not think the taxes are a nullity unless and until the state is the absolute owner. It is stipulated, "that if said lands were appraised as to value on this date (October 19th, 1929), it would be appraised at the approximate sum of $8,500." This sum is greatly in excess of the mortgage and interest. If the stipulation is well advised it seems probable the lands were redeemed before sheriff's deed issued. If they were, the taxes should not be canceled. If the land was not redeemed, then upon the issuance of the sheriff's deed the taxes and tax liens became a nullity and subject to cancelation. Taxes on farm lands, foreclosed for state loan, are not subject to cancelation until the sheriff's deed on foreclosure issues. Thereupon they are.

The trial court has no jurisdiction to enter a recommendatory judgment. Under art. 5, sec. 10 of the Constitution, this court has original jurisdiction to hear

claims against the state and render decision recommendatory to be reported to the next session of the legislature. We think the conclusions we have arrived at in this case preclude any claim against the state for any of the taxes considered, save only the state levy, which the county had paid into the state treasury. We have not considered, however, that phase of the matter because the jurisdiction of this court for recommendatory decision is original and not appellate and hence that matter is not before us.

The judgment is reversed and a new trial granted for the sole purpose of determining whether sheriff's deed issued upon the certificate of sale, with directions thereupon to enter judgment in accordance with the views herein expressed.

Lee, C. J., Givens and Varian, JJ., and Koelsch, D. J., concur.