

## OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 29, 1947

Hon. A. C. Winborn
District Attorney
Civil Courts Building
Houston 2, Texas

Opinion No. V-441

Re: Effect of acquisition of real property by City of Houston on prior State and County Tax liens and related questions.

Dear Mr. Winborn:

By your letter of October 3, 1947, we are advised that the "City of Houston has tendered to the Assessor and Collector of Taxes of Harris County various sums of money covering partial payments of State and County taxes on various parcels of property, which have been acquired by the City of Houston for public use, either through purchase or by eminent domain proceedings." You request an opinion from this Department on the following questions:

"(1) What is the effect upon State and County taxes and the liens securing them when real estate has been acquired for public use by the City of Houston through purchase or by condemnation?

"(2) Does such acquisition by the City cause such property to become exempt from State and County taxes?

"(3) Is the Assessor and Collector of Taxes authorized to cancel any assessments for taxes after title to the property has been acquired by the City?

"(4) Is the owner of real property from whom the City acquires such title relieved of the payment of taxes assessed against it prior to the time of its acquisition by the City?

"(5) Has the Assessor and Collector of Taxes for Harris County the authority to accept part payments of taxes on such property from the City of Houston? If so, how should such funds be handled?"

We will take up the tax questions presented above in the chronological order of their incidence and consider first question No. (4) which asks whether "the /former/ owner of real property from whom the City acquires title /is/ relieved of the payment of taxes assessed against it prior to the time of acquisition by the City." It is well settled in Texas that the person owning property on the first day of January is personally liable for the taxes for that year and that a later sale of the property during the year does not alter the rule. The controlling constitutional and statutory provisions are found in Article VIII, Section 15 of the Constitution of the State of Texas; Articles 7151, 7152, 7172, V.C.S. The following cases support the above conclusion: Carswell v. Habberzettle, 87 S.W. 911; Humble Oil and Refining Co. v. State, 3 S.W. (2) 56, writ refused; Childress County v. State, 92 S.W. (2) 1011.

This continuing liability of the former owner for taxes assessed against the land during the time of such ownership in itself precludes the existence of any authority in the Assessor and Collector of Taxes to cancel past assessments for taxes after title to the property has been acquired by the City of Houston. We answer your third question accordingly and do not deem it necessary to discuss other reasons for denying the Assessor and Collector such authority.

Your second question relates to the present status of these lands for the purposes of taxation. We can answer this question most concisely by quoting from the opinion rendered by the Supreme Court in A & M Consolidated Independent School District v. City of Bryan, 184 S.W. (2) 914.

". . .The pertinent provisions of our Constitution, Vernon's Ann. St., are as follows:

"'Article VIII. Sec. 2. All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the Legislature may, by general laws, exempt from taxation public property used for public purposes; * * *.'

"'Article XI. Sec. 9. The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor.

Fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics or builders lien, or other liens now existing.'

"It is apparent from the above provisions of our Constitution that some public property is absolutely exempted from taxation by virtue of the provisions of the Constitution, whereas other public property is not absolutely exempted, but may be so exempted if the Legislature so elects. Section 9 of Article XI appears to be self-operative and absolutely exempts from taxation the public property therein referred to, whereas Section 2 of Article VIII vests in the Legislature the power to determine whether or not the public property therein referred to shall be exempted from taxation. Daugherty v. Thompson, 71 Tex. 192, 199, 9 S.W. 99; Galveston Wharf Co. v. City of Galveston, 63 Tex. 14. See also City of Abilene v. State, Tex. Civ. App., 113 S.W. 2d 631, par. 7. /This last case holds that the use for public purposes need not be continuous and uninterrupted so long as the purpose for which it is owned and held has not been abandoned./

"We need here determine to which of these classes the property here involved belongs, for the Legislature by the provisions of Revised Statutes, Article 7150, has exercised the authority so vested in it, and has exempted from taxation all public property used for public purposes. That Article provides in part as follows:

"'Art. 7150. The following property shall be exempt from taxation, to-wit:

*   *   *   *   *   *

"'4. Public property.--All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or the United States, * * *.'

"* * *

"The property in question is owned by the City of Bryan, a municipal corporation, and is therefore public property. Is it used for public purposes? In determining whether or not public property is used for a public purpose the test appears to be whether it is used primarily for the health, comfort, and welfare of the public. Commonwealth v. City of Covington, 128 Ky. 36, 107 S.W. 231; 14 L.R.A., N.S., 1214; Galveston Wharf Co. v. City of Galveston, 63 Tex. 14. It is not essential that it be used for governmental purposes. Corporation of San Felipe de Austin v. State, 111 Tex. 108, 229 S. W. 845. It is sufficient if it be property which all of the public has a right to use under proper regulations. Galveston Wharf Co. v. City of Galveston, 63 Tex. 14, 23. The fact that charges are made or compensation is received for its use does not withdraw it from its public character, provided such charges are an incident to its use by the public and the proceeds received for its use inure to the benefit of the political subdivision. Galveston Wharf Co. v. City of Galveston, supra; 61 C.J. 421.. . ."

We are not advised as to the particular purposes for which the property involved in this request was purchased (obviously the property condemned was secured for public purposes); but assuming that such use will be within the above-quoted definition of "use for public purposes," the property will not be subject to taxation by the State or county while it is owned and used by the City of Houston for public purposes.

We pass now to a consideration of the State and County liens for taxes which had attached to each tract of land for the taxes assessed against it. Article VIII, Sec. 15 of the Constitution of the State of Texas; Art. 7172, V.C.S.; Richey v. Moor, 249 S.W.172. We assume, as indeed we have implied above, that the liens here involved are valid liens, i.e., such liens as were properly attached to the land and therefore enforceable before the land was acquired by the city.

The question of the effect on prior tax liens of acquisition of title to land by a state or other governmental body for public purposes is a difficult one on which the courts of various jurisdictions, and often within the same jurisdiction, have reached widely divergent results. The difficulty arises from the fact that the land has been acquired for a purpose which will exempt it from taxation after its acquisition. Some of the authorities which take the view that the lien is extinguished do

so on grounds of merger, Smith v. Santa Monica,121 P. 920; Peterson v. Maricopa County, 300 P. 175; however, most of the decisions strongly urge that the public policy reflected in the exemption provisions necessitates freeing public property used for public purposes from all tax burdens including those imposed before acquisition by the state or governmental subdivision. State v. Locke, 29 N.M. 148, 219 P. 790. Therefore, as pointed out in 158 A.L.R. 565, the cases taking the contra view on this point represent essentially a conflict in principle.

We will consider the effect of acquisition of the lands by the City of Houston on the prior State and County tax liens without distinguishing between the lands acquired by contract of purchase and the lands acquired by eminent domain proceedings for the reason that, ordinarily, the manner of acquisition, i.e., whether by purchase or by eminent domain, is not controlling in determining whether the lien for delinquent taxes is extinguished or suspended. 158 A.L.R. 573. The Washington courts have made this distinction, holding that where a municipality acquired property under a voluntary contract of purchase, it was acquired subject to a prior lien for state, county, and school district taxes, Puyallup v. Lakin,45 Wash. 368, 88 P. 578; but that when the property was taken by eminent domain proceedings, the municipality acquired it freed from the burden of prior tax liens. Gasaway v. Seattle,52 Wash. 444, 100 P. 991. We are of the opinion that this particular distinction should not be made a controlling one since it results in determining the ultimate existence or nonexistence of the lien by the parties' ability or inability to agree on the value of the land. See Art. 3264, V.C.S., which prescribes the procedure in eminent domain proceedings and requires that the statement which is filed with the county judge contain an allegation to the effect that plaintiff and owner have been unable to agree upon the value of the land or the damages; and 16 Tex. Jur. § 117 and authorities cited therein.

Viewing the land acquired by the City of Houston without regard to the two different methods of acquisition, the facts presented by your request are substantially the same as those presented to the Court in City of Dallas v. State, 28 S.W. (2) 937, error refused. In that case the State of Texas sued the city for taxes alleged to be due the State, Denton County, Road District No. 3 and School District No. 53 of said county. The taxes were alleged to be due on the reservoir site of the Dallas reservoir. The Court held that the reservoir site should be held exempt from taxation but that "the city of Dallas should be

held liable" for all taxes due on lands occupied by the reservoir "for the years prior to its purchase by the city." (Opinion O-4956 of this Department follows the holding of this case.) The State made Application for Writ of Error, which was refused, contesting the exemption of the reservoir site after acquisition by the city. The Application contains the following statement:

"A trial was had in the District Court without a jury and a judgment was rendered in favor of the State for the taxes sued for and a lien was decreed in favor of the State against the land for the amount of the taxes, and the lien was foreclosed in the judgment of the court. An appeal was regularly taken by the City . . . and the judgment of the District Court was reformed by the Court of Civil Appeals, so as to deny a recovery for the taxes accruing since the acquisition of the land by City of Dallas, and judgment was awarded the State for the sum of $206.97, representing delinquent taxes accruing prior to the acquisition of the land by the City."

The Judgment entered by the Court of Civil Appeals reads as follows:

"This cause came on to be heard on the transcript of the record, and the same being inspected, it is the opinion of the court that there was error in judgment. It is, therefore, considered, adjudged and ordered that the judgment of the trial court, insofar as it rendered judgment in favor of the appellee for taxes accruing on the reservoir site of the City of Dallas subsequent to January 1, 1925, be and it is hereby reversed and judgment as to those taxes rendered in favor of the appellant, City of Dallas, but the judgment for taxes due on said lands accruing prior to January 1, 1925, is hereby reformed and affirmed for the sum of $206.97 against the City of Dallas. It is further ordered that the appellee, the State of Texas, pay all costs in this behalf expended, . . . and that this decision be certified below for observance."

Thus it is clear that the judgment of the trial court was reversed only insofar as it rendered judgment in favor of the State and the various taxing units for taxes which allegedly accrued after acquisition by the City of Dallas; but the judgment was expressly affirmed for the sum of the taxes due prior to acquisition. This affirmation necessarily affirmed the existence of the lien which had been declared in favor of the State and foreclosed in the judgment of the district court. There can be no question that the City of Dallas case, in view of its entire

record, stands for the proposition that the city could protect its interest in the lands only by paying the taxes which were delinquent when the property was acquired by the city. In other words, the prior tax liens were not extinguished, and the city held the lands subject to the liens for such delinquent taxes.

The very able brief which accompanied your request directed our attention to State v. Stovall, 76 S.W. (2) 206 and to the fact that the annotation in 158 A.L.R. 565 cites Childress County v. State, 92 S.W. (2) 1011, as one of the authorities for the proposition that acquisition of title to land "by a state or other governmental body acts to extinguish prior tax liens against the property."

We find nothing in State v. Stovall, 76 S.W. (2) 206 (which only holds that "when legal title to such property is acquired by or vests in the state and the same is used by it for a public purpose, all subsequent proceedings to collect such tax by enforcing such lien are without effect and void") nor in Childress County v. State, 92 S.W. (2) 1011, which would justify our holding that the City of Dallas case has been overruled. We have studied these opinions, and we have reached the conclusion announced above after a careful consideration of these cases and the authorities in other jurisdictions.

In the Childress case agricultural school land, which by Article VII, Section 6a of the Constitution of the State of Texas is subject to taxation except for State purposes, was sold by Childress County and a vendor's lien was retained. During the interim of private ownership taxes became delinquent. Judge Sharp held that the county reacquired the land free of the lien for State taxes. This result was reached because the Court looked beyond the county's ownership to ultimate beneficial ownership in the State and therefore reached the conclusion that the tax lien of the State was merged with the ownership of the county. We quote the following excerpts from Judge Sharp's opinion:

"The land involved is agricultural school land. The title to same reverted to Childress county in February, 1933. Section 6a of Article 7, supra, expressly provides that such land may be taxed as privately owned lands, except that it may not be taxed for state purposes. The county is merely an arm of the state. It is a political subdivision thereof. In view of the relation of a county to the state, the state may use, and frequently does use, a county as its agent in the

discharge of the State's functions and duties. Jones v. Alexander, 122 Tex. 328, 59 S.W. (2d) 1080; Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818; Bexar County v. Linden, 110 Tex. 339, 220 S.W. 761. The state has appropriated and dedicated to counties, for public school purposes, a part of its public domain. The title thereto is vested in the counties. Section 6 of article 7 of the Constitution. This is for the benefit of the state as well as for the benefit of the counties. When the title to this land reverted to Childress county, it also, in a certain sense, reverted to the state. Greene v. Robison, 109 Tex. 367, 210 S.W. 498. (Emphasis added throughout this opinion)

"While this precise question, so far as we know, has never been determined by this court, we think the great weight of authority sustains the rule that when the title to this land reverted to Childress county, the tax lien for state purposes became merged with the ownership of the land by the county. This property, dedicated to a county exclusively for a public purpose, and having been sold by the county to individuals, who failed to comply with the contract of sale, whereupon the title to the land reverted to the county, cannot be burdened with taxes due the state during the time it was privately owned. 61 C.J., p. 945, and cases cited; 26 R.C.L., p. 299, and authorities cited."

The A.L.R. Annotation does not mention the second holding in the case which deals with the lien for taxes due Cochran County in the following language:

"When the land reverted to Childress County, it was reacquired subject to the taxes due thereon while it was privately owned. Therefore Childress County can protect its interest in the land by paying the taxes due Cochran County for the years 1931 and 1932, or let it be sold for such taxes."

This result flows from the nature of the particular land involved as the opening statement of the opinion reveals: "Section 6a of Article 7 and section 15 of Article 8 of the Constitution should be considered together." The Court also said that there is nothing in Art. 7150a "to show that it was the intention of the Legislature to prohibit a special lien being placed on agricultural and grazing school lands to secure taxes legally due thereon."

Thus there is nothing in the Childress case to support the conclusion that the lien for prior taxes will be extinguished absent the merger of such lien upon acquisition of title by the government or governmental subdivision.

The Supreme Court of Nebraska has construed the Childress case as being authority for the contra view that "when a government or a governmental subdivision purchases property upon which there exists a lien for taxes, and the lien is not extinguished, it takes it subject to the lien to the same extent as would a private purchaser. United States v. Alabama, supra; Triangle Land Co. v. City of Detroit, 204 Mich. 442, 170 N.W. 549, 2 A.L.R. 1526; City of Santa Monica v. Los Angeles County, 15 Cal. App. 710, 115 P. 945; State v. Salt Lake County, 96 Utah 464, 85 P. 2d 851; In re Graley's Estate, 183 Wash. 268, 48 P. 2d 634; Childress County v. State, 127 Tex. 343, 92 S.W. 2d 1011; Public Schools of City of Iron Mountain v. O'Connor, 143 Mich. 35, 108 N.W. 426; City of Puyallup v. Lakin, 45 Wash. 368, 88 P. 578." Madison County v. School Dist. No. 2, 27 N.W. (2) 172.

We view the Childress case as does the Supreme Court of Nebraska with the limitation that the application of the theory of merger may result in an extinguishment of prior liens. Of course, as previously pointed out, even if the lien is not merged, it becomes unenforceable when legal title vests in the State. State v. Stovall, supra.

We do not think that the theory of merger can be applied to the facts of this case to extinguish the prior tax lien of the county. As was said in Santa Monica v. Los Angeles County, 15 Civ. App. 710, 115 P. 945:

"The bare acquisition of the premises /by the city/ upon which the tax levy attached did not carry with it any interest or estate in the lien therein created for county purposes. There was, therefore, no vesting of any lesser estate, held in the same right or otherwise, through which merger could be said to result. The plaintiff, when it acquired this land, took it subject to the lien for county purposes to the same extent as would a private purchaser."

Nor do we think that an application of the theory of merger results in extinguishing the lien for State taxes. For, while municipalities are political subdivisions of the State, they are not "arms of the State"; and they are organized "not so much with a view to the interest of the public,

as for the private advantage of their citizens." 30 Tex. Jur., § 3 and authorities cited therein.

You are therefore advised that the liens for State and county taxes are not extinguished by the acquisition of the title to the land by the City of Houston even though the land has been acquired for public purposes, and that the City of Houston holds such lands subject to the liens thereon.

Your fifth question relates to the method of payment of these delinquent taxes and is as follows:

"(5) Has the Assessor and Collector of Taxes for Harris County the authority to accept part payments of taxes on such property from the City of Houston? If so, how should such funds be handled?"

We assume that by "partial payments" is meant "payments" in an amount less than the amount of State and county taxes which were delinquent for any one year on any one tract separately assessed for that year. We enclose a copy of Opinion No. 0-4545 of this Department which covers the various aspects of this question in detail and holds that the Tax Assessor and Collector has no authority to establish a system for receiving "partial payments" of delinquent taxes.

## SUMMARY

The former owner of real property from whom the City of Houston acquired title is not relieved of the payment of taxes assessed against it prior to acquisition by the city. Art. VIII, Sec. 15, Const. of Texas; Articles 7151, 7152, 7172, V.C.S.; Carswell v. Habberzettle, 87 S.W. 911; Humble Oil and Refining Co. v. State, 3 S.W. (2) 56, writ refused; Childress County v. State, 95 S.W. (2) 1011. The Assessor and Collector is without authority to cancel past assessments for taxes after title to the property has been acquired by the City of Houston. The property will not be subject to taxation by the State or county while it is owned and used by the City of Houston for public purposes. Art. XI, Sec. 9; Art. VIII, Sec. 2, Const. of Tex.; Art. 7150(4), V.C.S.; City of Bryan v. A. & M. Consolidated School District, 184 S.W. (2) 914; and authorities cited therein. The

method of acquisition used by the city, i.e., whether by purchase or by eminent domain proceedings, should not determine the present status of prior tax liens. 158 A.L.R. 573. The valid State and county tax liens are not extinguished by the acquisition of the title to the land by the City of Houston even though the land has been acquired for public purposes, and the city holds such land subject to said liens. Art. VIII, Sec. 15, Const. of Tex., 7172 V.C.S.; City of Dallas v. State, 28 S.W. (2) 937, error refused; Santa Monica v. Los Angeles County, 15 Cal. App. 710, 115 P. 945. The Assessor and Collector has no authority to accept "partial payments" of taxes in amounts less than the amount of State and county taxes which were delinquent for any one year on any one tract separately assessed for that year. Opinion 0-4545.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Marietta Creel
Mrs. Marietta Creel
Assistant

APPROVED:

Fagan Dickson
FIRST ASSISTANT
ATTORNEY GENERAL

MC/JCP:jrb