[No. 14930. *En Banc.* January 10, 1919.]

DAN HURLEY *et al., Appellants,* v. OLYMPIA OYSTER COMPANY, *Respondent.*[1]

PUBLIC LANDS (101)—FISH (3)—OYSTER LANDS—DISPOSAL BY STATE — STATUTES. The "Callow" act, Rem. Code, §§ 6806, 6807, providing for the sale of natural or artificial oyster beds to persons cultivating oysters thereon, authorizes the sale of oyster beds whether planted upon tide lands or upon lands below tide lands; in view of Rem. Code, § 6641, which defines tide lands as all lands over which the tide ebbs and flows from the line of ordinary high tide to the line of extreme low tide "excepting oyster reserves"; the intent of which is to except oyster lands from the definition of tide lands, whether upon tide lands or not.

Appeal from a judgment of the superior court for Mason county, Mitchell, J., entered March 4, 1918, in favor of the defendants, in an action of ejectment and for damages, tried to the court. Affirmed.

*Thomas M. Vance* and *J. H. Easterday,* for appellants.

*Frank C. Owings,* for respondent.

MOUNT, J.—This action was brought to eject the defendant from the possession of certain oyster lands in Mason county, and for damages for oysters taken from the lands by the defendant. The complaint alleged title in the plaintiff by deed from the state of Washington dated on March 10, 1913. The defendant, for

[1]Reported in 177 Pac. 732.

answer, denied title in the plaintiff and alleged title in itself. Upon these issues the case was tried to the court without a jury, and the trial court concluded that the defendant was the owner of the lands and entered judgment accordingly. The plaintiff has appealed.

The facts are not in dispute. It appears that, about the year 1900, the state, under the provisions of ch. 25, Laws of 1895, p. 39 (Rem. Code, §§ 6806, 6807), commonly known as the Callow act, issued deeds to the respondent and its predecessors in interest to certain tide lands known as oyster lands. These lands were described by metes and bounds. A portion of these described tracts extends below the line of mean low tide, and a portion above the line of mean low tide. The respondent and its predecessors in interest have cultivated these lands to oysters since prior to March, 1895. In the year 1913, upon the application of the appellant, the state issued a deed to the appellant for:

"All tide lands of the second class, owned by the state of Washington, lying between the line of mean low tide and the line of extreme low tide and in front of lot two (2), section twenty-three (23), township nineteen (19) north, range three (3) west W. M., with a frontage of 20.81 lineal chains, more or less, measured along the meander line, according to a certified copy of the government field notes of the survey thereof on file in the office of the commissioner of public lands at Olympia, Washington.

"Subject to such rights, title or interest as may have been acquired by the purchaser of any part of said lands as tide lands suitable for the cultivation of oysters under any deed or contract heretofore issued by the state of Washington . . ."

Under this deed the appellant claims the lands cultivated to oysters by the respondent lying between the line of mean low tide and extreme low tide. The re-

spondent claims the oyster beds lying between the line of mean low tide and extreme low tide by reason of deeds executed prior to 1900 by the state, describing the lands by metes and bounds and including therein the lands between extreme low tide and mean low tide as described in its deeds.

The main question which determines the case is whether the conveyance of oyster beds or tide lands, used for the cultivation of oysters below the line of mean low tide, by the state to the respondent and its predecessors in interest was a valid conveyance. It is argued by the appellant, in substance, that, prior to the act of March 8, 1911 (Laws of 1911, ch. 36, p. 129; Rem. Code, §§ 6641, 6641-1), the officers of the state were not authorized to convey tide lands below the line of mean low tide, because oyster lands are tide lands and there is no authority for the sale of tide lands except as provided by law with reference to such lands. It is no doubt true that oyster lands are tide lands, but it is not true that all oyster lands are necessarily tide lands as tide lands are defined by statute; for tide lands are lands upon which the tide ebbs and flows between ordinary high and extreme low water, which lands at certain periods are not covered by water. It is well known that oyster lands are generally to be found below the line of extreme low tide, or in navigable water as well as upon tide land. *State v. Sturtevant*, 76 Wash. 158, 173, 135 Pac. 1035, 138 Pac. 650. Tide lands, as described by the act of 1911, are:

"All lands over which the tide ebbs and flows from the line of ordinary high tide to the line of extreme low tide, . . . excepting oyster reserves." Laws of 1911, p. 130, ch. 36, § 1, subd. 2 (Rem. Code, § 6641).

By this definition of tide lands, we think it is plain that oyster lands, even though upon tide lands, are

excepted from the definition of tide lands as such. In the year 1895, by an act commonly known as the Callow act (Laws of 1895, ch. 25, p. 39, § 1; Rem. Code, §§ 6806, 6807), the legislature provided that all persons having qualifications to enable them to purchase tide lands within the state, and who in good faith entered upon tide lands not in front of any incorporated city or town, nor within two miles thereof on either side, and planted and cultivated thereon artificial oyster beds, and who continued to occupy and work the same continuously and in good faith to March 26, 1890, and were then working oyster beds in good faith, should be permitted to purchase the same for the purpose of cultivating oysters thereon. The act also provided that the deed to be issued should convey to the grantee the land for the purpose of cultivating oysters only thereon, and that, when such cultivation ceased, and upon certain conditions therein named, the land would revert to the state. It was under this act that the respondent acquired title to the oyster beds in question. It is true the words *tide lands* are used in that act, but the act does not undertake to limit the cultivation of oyster beds to tide lands defined as such. It says that all persons who

"in good faith entered upon tide-lands . . . and planted and cultivated thereon artificial oyster-beds, and who continued to occupy and work the same continuously and in good faith to March 26, 1890, and ever since said date, and who are now in possession of and working said oyster-beds in good faith, shall be permitted to purchase the same for the purpose of cultivating oysters thereon, and for no other purpose, whether said tracts were originally covered by alleged natural oyster-beds or not; . . ."

We think it was plainly the object of this act to authorize the sale of these oyster beds and to convey the same for the purpose of cultivating oysters there-

on, whether the oyster beds were above or below the lines of mean high tide or extreme low tide. As further evidencing this conclusion, in all the statutes defining tide lands, oyster lands have been always excepted. In the case of *State v. Scott,* 89 Wash. 63, 154 Pac. 165, in discussing the effect of deeds issued under the act of 1911, we said:

"These two deeds are limited by the express terms of the statute defining tide lands, then in force, to lands above the line of mean low tide, and excepting oyster lands. *Pearl Oyster Co. v. Heuston, supra* [57 Wash. 533, 107 Pac. 349, 832, 135 Am. St. 1007]. They did not convey any of the lands theretofore deeded under the Callow act."

Since oyster lands and oyster reserves have been excepted from the definition of tide lands from the beginning up to the present time, we are of the opinion that, when oysters are grown upon tide lands, such oyster beds are excepted from the definition of tide lands, and the statutes relating to and defining tide lands do not include oyster beds; and we are of the opinion, also, that, under the terms of the Callow act, oyster beds planted and cultivated upon tide lands, or lands below lands defined as tide lands, may be granted by the state, and that, when deeds were made, the officers of the state making such deeds under the Callow act conveyed the right described in such deeds to the grantees. In the case of *Scott v. Olympia Oyster Co.,* 63 Wash. 364, 115 Pac. 737, in referring to the effect of such deeds, we said:

"It was intended to convey, and did convey, valuable property rights, although not a fee simple title. The interest conveyed may be regarded as somewhat similar to a base or qualified fee, although we need not hold it to be such. It would be unreasonable and an injustice to conclude that, having conveyed this particular oyster land to Gale, the state, without exer-

cising or attempting to exercise its right of repossession, thereafter conveyed it in fee simple to appellants as tide lands, . . ."

The same is true in this case. These oyster beds have been cultivated by the respondent for many years under deeds executed by the state to the respondent and its predecessors. It would be unreasonable to conclude that the state would now, by the deed of March 10, 1913, attempt to convey a part of these oyster beds to the appellant. We think the deed upon its face clearly indicates that there was no such intention on the part of the officers executing the deed, because it says that the deed is

"Subject to such rights, title or interest as may have been acquired by the purchaser of any part of said lands as tide lands suitable for the cultivation of oysters under any deed or contract heretofore issued by the state of Washington. . . .,"

thus indicating quite clearly that the deed of March 10, 1913, under which appellant claims, was not intended to convey any of the oyster beds which had theretofore been conveyed by the state to the respondent and its predecessors in interest. We are of the opinion, therefore, that the trial court correctly concluded that the deeds issued by the state to the respondent under the Callow act were executed by authority of law and conveyed to the respondent the beneficial use of the tide and other lands covered by the oyster beds, and that the deed issued by the state to the appellant did not convey any right to the appellant to enter upon the oyster beds cultivated by the respondent as described by metes and bounds in its deeds from the state.

The judgment appealed from is therefore affirmed.

MAIN, C. J., HOLCOMB, MACKINTOSH, FULLERTON, PARKER, TOLMAN, and CHADWICK, JJ., concur.