[No. 29465.   Department One.   March 7, 1945.]

M. E. HALVORSEN *et al., Appellants,* v. PACIFIC COUNTY *et al.,*
*Respondents.*[1]

[1]Reported in 156 P. (2d) 907.

*Fred M. Bond,* for appellant.

*The Attorney General, R. A. Moen, Assistant,* and *John T. Welsh,* for respondents.

GRADY, J.—This action was brought by M. E. Halvorsen and Gina Halvorsen, husband and wife, against the county of Pacific and the state of Washington to secure a decree to the effect that they were the owners in fee simple of the land described in their complaint, and that neither of the defendants had any right, title, or interest in or to the property. The defendants answered separately, the state of Washington praying that it be adjudged that it was the owner of the land in fee simple and that none of the other parties to the action had any right, title, or interest therein. Pacific county in its answer prayed that the action be dismissed.

The trial of the action resulted in a decree declaring that since January 17, 1918, the state of Washington was the owner of the land. It was also decreed that Pacific

county had no lien thereon for taxes. The plaintiffs have taken an appeal from the decree.

The factual situation as disclosed by the record is as follows:

The tract of land involved contained 24.88 acres and was a part of the tidelands acquired by the state of Washington on admission to statehood. On December 22, 1896, the state entered into a written contract with John Walkowsky for the sale of the land to him. The contract was made pursuant to chapter 24, p. 36, Laws of 1895, Rem. Rev. Stat., § 8040 [P. C. § 6503-13.14] *et seq.*, commonly known as the Bush oyster act. (This act was repealed by chapter 47, p. 128, Laws of 1935 with a saving clause.)

By virtue of § 26, p. 323, of chapter 124, Laws of 1893 (repealed by chapter 130, Laws of 1925, Ex. Ses., p. 227), the land became subject to taxation as the property of the vendee. On March 9, 1899, the state of Washington executed and delivered to Walkowsky a deed conveying the property to him.

On January 17, 1918, Walkowsky executed and delivered to the state a document entitled "Certificate of Abandonment of Tide Lands Purchased from the State of Washington for Oyster Cultivation," by which he certified that he was in possession of the land described therein; that the same had become unfit and valueless for the purpose of oyster planting, and that he had abandoned all claim to the land to the state of Washington and made the certificate for the purpose of determining the land unfit and valueless for oyster planting and as a certificate of abandonment required under the provisions of chapter 24 of the Laws of 1895. The certificate of abandonment was filed in the office of the auditor of Pacific county January 17, 1918, and was recorded in the office of the state land commissioner January 24, 1918.

At the time of entering into the contract and until May 16, 1918, Walkowsky was a married man and his wife was Kate Walkowsky. Mrs. Walkowsky was not mentioned or referred to in either the contract or the deed, and she did not join her husband in the execution of the certificate of

abandonment. On May 16, 1918, a decree was entered by the superior court for Pacific county whereby John Walkowsky and Kate Walkowsky were divorced. The property involved in this case was not referred to in the divorce proceedings. The court awarded certain real and personal property to John Walkowsky and certain personal property to Kate Walkowsky and then awarded him any other community real estate situated in the county of Pacific that stood in his name, as his sole and separate property.

The record is not clear as to just when Pacific county commenced to levy taxes upon the property, but it may be inferred that it did so immediately after the contract to sell was made on December 22, 1896. There is evidence that taxes were levied for the year 1913 and subsequent years. Walkowsky did not pay any of the taxes, and none were paid subsequent to the execution of the certificate of abandonment.

In the year 1930, Pacific county instituted a proceeding to foreclose a tax lien upon this property, and, pursuant to a decree of foreclosure and public sale thereof, a deed was given to the appellant Halvorsen. This deed was lost, and on August 13, 1942, the treasurer of Pacific county gave appellant Halvorsen another one.

The appellants base their claim of title to the land upon the deed from the state of Washington to Walkowsky and assert that it conveyed an estate in fee, or, at least, an estate in fee subject to be defeated by the happening of a condition subsequent; that the land became the community property of Walkowsky and wife and that the certificate of abandonment, not having been executed by Kate Walkowsky, was void and of no force and effect; that the land continued to be the community property of Walkowsky and wife and subject to taxation by Pacific county; that the deed executed by Pacific county to the appellants by virtue of valid tax foreclosure proceedings, vested a fee simple title in them, and that the respondents were estopped by their subsequent course of conduct to claim or assert any title to the property.

The respondents claim that, as the property was purchased from the state of Washington by Walkowsky for the limited use of oyster planting, and the title thereto could be reclaimed by the state whenever it ceased to be fit or valuable for oyster planting, or Walkowsky failed to use it for such a purpose, the certificate of abandonment, executed as provided by statute, caused what title he had to the property to revert to the state; and that it was not necessary, in order to make his action valid, that his wife join in the execution of such certificate. The state of Washington further contends that, when the title to the property reverted to the state, not only the taxes levied upon the property prior thereto, but all subsequent taxes, became void, and that the appellant acquired no title by virtue of the tax foreclosure proceedings.

In support of their claim that the deed from the state conveyed to Walkowsky an estate in fee, the appellants cite *Palmer v. Peterson,* 56 Wash. 74, 105 Pac. 179. We do not think that this case warrants such an interpretation. The action was one to restrain a trespass. It was claimed that, as the land involved was covered by water to a depth of seven or eight feet at high tide, there existed the right to pass over it by others; but it was decided that, as the deed from the state was absolute in form, it carried with it the right to the exclusive possession and enjoyment of the land granted. The court did not determine the kind of title the owner possessed.

The purchase of the land by Walkowsky was made pursuant to chapter 24, p. 38, Laws of 1895; § 9 thereof was as follows:

"If from any cause any tract or tracts, parcel or parcels of land purchased under the provisions of this act shall become unfit and valueless for the purposes of oyster planting, the party having so purchased and being in the possession of the same may upon certifying such fact under oath to the commissioner of public lands and to the auditor of the county wherein such lands are situated and also upon filing under oath a certificate of abandonment of such tract or tracts, parcel or parcels of land, in the office of each of said officials, such party shall then be entitled to again

make purchase as hereinbefore provided; or if said land be used by the purchasers or any successors in interest of such purchaser in whole or in part for other than the purposes specified in this act, then upon application by any citizen to the state land commissioner such sale may be canceled, and the said land shall revert to the state and shall be subject to sale as herein provided, but not to such defaulting purchaser or such defaulting successor in interest."

These provisions of the statute were made a part of the deed from the state to Walkowsky, and in addition thereto the deed contained the following:

" . . . and such certificate shall be and be deemed to be a reconveyance to the state of Washington and the lands therein described as having become unfit and valueless for the purposes of oyster planting."

■■■ The precise nature of the title to oyster land acquired pursuant to chapters 24 and 25, pp. 36, 39, Laws of 1895, has not been definitely determined. The cases of *Scott v. Olympia Oyster Co.*, 63 Wash. 364, 115 Pac. 737, and *Hurley v. Olympia Oyster Co.*, 105 Wash. 244, 177 Pac. 732, discussed such a title to some extent, but the court did not define it.

The general rule is that a deed which conveys an estate in fee simple but provides for a forfeiture or reversion upon the happening of some event or condition, creates an estate in fee simple subject to a condition subsequent. *Mouat v. Seattle, L. S. & E. R. Co.*, 16 Wash. 84, 47 Pac. 233; *Aumiller v. Dash*, 51 Wash. 520, 99 Pac. 583; Restatement of the Law of Property, vol. 1, p. 133, § 45.

The holder of such an estate has all the rights in respect to it of a fee simple owner until the condition subsequent has happened. Title is not divested automatically upon the happening of the event or condition, but some affirmative action on the part of the grantor or his successors is necessary to bring about a forfeiture or reversion of the estate, and this is true even though the conveyance expressly provides for a reversion. *Mouat v. Seattle, L. S. & E. R. Co., supra;* Thompson on Real Property, vol. 4, § 2129, p. 673; Restatement of the Law of Property, vol. 1, § 57, p. 196.

We conclude that the deed to John Walkowsky conveyed to him an estate in fee simple subject to a condition subsequent.

It will be seen from the foregoing statute that the legislature provided two methods whereby land sold for oyster planting could revert to the state. (1) If, from any cause, the land acquired became unfit and valueless for the purpose of oyster planting, the purchaser could abandon the property and acquire other property therefor. The statute limited each purchaser to a maximum of one hundred acres in area, and he could not acquire any additional oyster land unless he abandoned and surrendered the land to the state which had become unfit and valueless for the purpose of oyster planting. (2) If the purchaser used the land in whole or in part for other than oyster planting and culture, then, upon application made by any citizen to the state land commissioner, the sale might be canceled and the land revert to the state.

The planting and culture of oysters by Walkowsky was the prosecution of a community business or enterprise, and as the managing agent of the community he had the right to acquire land for such purposes, but he could only acquire it and use it in the manner provided by the statute. After the lapse of many years, he found that the land had become unfit and valueless for the purpose of oyster planting and certified such fact on oath to the commissioner of public lands and to the auditor of Pacific county. He also filed in the office of the commissioner of public lands and the auditor of Pacific county the certificate of abandonment provided by § 9 of the act of 1895. By this action the community, composed of himself and wife, then became entitled to again make a purchase of land for the purpose of oyster planting.

■ ■ The deed to Walkowsky provided that the certificate of abandonment should constitute a reconveyance to the state of the land therein described. The act of 1895 did not require a formal conveyance in order to cause the land to revert to the state when it developed that such land had become unfit and valueless for the purpose of oyster

planting. The reversion to the state became complete when Walkowsky declared that the land had become unfit and valueless for the purpose of oyster planting in the manner provided by § 9 of the act of 1895, and the declaration was one which he, as managing agent of the community, had the power and authority to make. It was an act done by him in the prosecution of the community business and enterprise, and even though the certificate had to be made in writing and under oath, it was not necessary that Mrs. Walkowsky join in its execution in order to effect a reversion.

The certificate of abandonment executed by Walkowsky should not be considered as a conveyance, but as one of the methods by which the property could be abandoned and revert to the state, so that it could be resold by the state, and the purchaser become eligible to acquire other land for planting oysters.

The reasoning of the court in the case of *Thygesen v. Neufelder*, 9 Wash. 455, 37 Pac. 672, is of much assistance. The chief value of that case, as an authority, is that it points out the difference between a conveyance and a surrender of property, and is authority for the rule that, while a husband may not have the right to convey community real estate, he may under some circumstances make a surrender of it.

In the *Thygesen* case, the husband had surrendered community real estate in an insolvency proceeding so that it could be used in satisfaction of community debts. In that case the court said:

"But it is contended on the part of the respondent, that to give to the deed of the husband alone any force whatever, is in violation of our statute (Gen. Stat., § 1400), which provides that no conveyance or incumbrance of the community real estate shall be valid unless the husband and wife join in the making thereof. If this deed comes within the inhibitions of this statute, it is undoubtedly void. But in our opinion it does not. As above suggested, we think that it is not a deed or an incumbrance of the property in the ordinary sense. On the contrary, it is but a surrender of the same into the custody of the court for the purpose of having

it applied as the law requires it to be; and if there is any surplus remaining, it would be returned to the community. The paper executed by the husband should therefore be considered not as a conveyance but as one of the methods by which the property may be subjected to the community debts, and that it being in the power of the husband to contract such debts in the prosecution of the business of the community, it is within his power to set on foot the machinery of the law by which its property may be applied to their payment."

Our conclusion is that it was not necessary for Kate Walkowsky to join her husband in the execution of the certificate of abandonment.

On the question of the validity of the taxes levied upon the property, we must consider those levied prior to the execution of the certificate of abandonment, and those levied thereafter.

We are of the opinion that, when the title of the purchaser of the land reverted to the state, the lien thereon for the unpaid taxes became unenforcible. The deed from the state to the purchaser was upon a condition that the title conveyed was subject to be defeated upon a breach of that condition, either by voluntary surrender or by appropriate action, and in either event the result would be to divest the owner of any further interest in the land. The enforcement of a tax lien would be an idle act and would only tend to cloud the title. *State v. Frost,* 25 Wash. 134, 64 Pac. 902; *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68; *State v. Snohomish County,* 71 Wash. 320, 128 Pac. 667.

In the *Frost* case, we held that when the interest of the contract purchaser of state school land was forfeited by the state, the lien for taxes levied before forfeiture became unenforcible thereafter.

In the *Gasaway* case, we held that, when a city of the first class acquired real estate by the exercise of its power of eminent domain, the county could not thereafter enforce a prior tax lien thereon, even though such county had not been made a party to the eminent domain proceedings.

In the *Snohomish County* case, the title to the property

involved had passed to the state after having been assessed for taxes, but before the levy was made. We held in that case that further proceedings to complete the tax lien were arrested when the state acquired title.

The rule pronounced by these cases is that, when the state or one of its legal subdivisions acquires full title to real estate, the existing county tax liens thereon are not enforcible, because if a sale was made on foreclosure of the lien it would be only of the interest of the owner from whom title was acquired, and, that interest having ceased to exist, there would be nothing to sell under the foreclosure proceedings.

A very well-considered case on this subject is that of *State v. Locke,* 29 N. M. 148, 219 Pac. 790, 30 A. L. R. 407. It cites and quotes from *Gasaway v. Seattle, supra.* The opinion cites other cases pronouncing the same rule. Other cases are referred to in the A. L. R. annotation. The leading case to the contrary is *Triangle Land Co. v. Detroit,* 204 Mich. 442, 170 N. W. 549, 2 A. L. R. 1526. The A. L. R. annotation cites many cases in harmony with the *Locke* case, including our cases of *Gasaway v. Seattle* and *State v. Snohomish County, supra.*

We have not overlooked the case of *Puyallup v. Lakin,* 45 Wash. 368, 88 Pac. 578, which seems to be contrary to the decision we are making in this case, but that case was distinguished in the *Gasaway* and *Snohomish County* cases, *supra,* and we think there is the same distinction between that case and the case at bar.

The taxes levied subsequent to the execution of the certificate of abandonment were void. The title to the land had reverted to the state. The title of the owner had been extinguished, and by Art. VII, § 4 of the constitution, the fourteenth amendment thereto, and by Rem. Rev. Stat., § 11111, subd. 2 [P. C. § 6882-7], the land was not subject to taxation thereafter and while title thereto was vested in the state. The foreclosure proceedings of the county were invalid, and the tax deed to appellants passed no title to them.

We cannot accept the contention of the appellants

that there was any act or omission on the part of either the state of Washington or Pacific county which would constitute an estoppel against either of them. An estoppel may operate against a state or county under certain circumstances, as decided in *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999; and *Strand v. State,* 16 Wn. (2d) 107, 132 P. (2d) 1011, but there cannot be an estoppel if the acts done were unlawful or beyond the power of the state or county, and such was the rule pronounced in those cases.

The estoppel claimed in this case is based upon the fact that Pacific county continued to levy and collect taxes against the land, and the state accepted and received its proportion thereof, after the appellants acquired their tax deed, thus leading them to believe that their title to the land was valid and the land was subject to taxation. The acts done which formed the basis of the claimed estoppel were beyond the power of Pacific county, because the tax deed was void. The title to the land continued to be in the state and it was not subject to taxation, and the state in accepting and receiving a proportion of the taxes unlawfully levied and collected did something it had no power or legal right to do.

Ordinarily, it would be sufficient to affirm the decree of the lower court, but as the title to real estate is involved, and in view of the fact that there is authority to the effect that, even though a tax lien on land is not enforcible while it is in state ownership, such lien nevertheless remains on the land and becomes enforcible if and when the land comes into private ownership, we think it proper to now decide whether there is a dormant tax lien upon the land in question for taxes levied prior to reversion to the state.

The cases we have cited hold that, when property is acquired by the state, county or city, existing tax liens are discharged or merged in the title acquired by the public body. We think this rule is supported by the better reasoning and now hold that the lien of the taxes levied upon this land prior to reversion became merged in the title acquired by the state and such taxes are not a lien thereon.

The decree is affirmed, but the case is remanded to the lower court so that it may be amended to provide that the tax lien upon the land at the time of the execution of the certificate of abandonment became void, and that the cloud on the title created by the lien be removed.

BEALS, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.

