## CITY OF MARLIN v. STATE et al.
### No. 2753.

Court of Civil Appeals of Texas. Waco.
Oct. 23, 1947.

Thos. B. Bartlett, Jr., of Marlin, for appellant.

Carroll Pearce and Dodson & Reagan, all of Marlin, for appellees.

LESTER, Chief Justice.

This suit was brought for the collection of delinquent taxes against two tracts of land in the city of Marlin. The taxing units seeking to participate in the amount due and asking that their constitutional and statutory liens be foreclosed are: The State of Texas, the County of Falls, Falls County Road District No. 9 and the Marlin Independent School District. The case is before us upon an agreed statement of facts. For convenience, the taxing units seeking to recover herein will be designated as plaintiffs and the city of Marlin as the city. The land involved will be referred to as tract No. 1 and tract No. 2. Tract No. 1 is 73½ ft. x 160 ft. and tract No. 2 is 72 ft. x 160 ft.

The city purchased tract No. 1 on June 17, 1939. Up to 1936 and for several years prior thereto T. B. Ellsberry owned tract No. 2 and in 1936 he was indebted to the city in the sum of $1,598.53 and to the other taxing units he was indebted in the sum of $726.47, both amounts representing delinquent taxes, penalty and interest. On the 12th day of October, 1936, the city secured a judgment foreclosing its tax lien. The other units were not made parties to the suit. On December 1, 1936, the property was sold to the city in full satisfaction of said judgment. All proceedings in respect to securing the judgment and sale were regular and Ellsberry did not pay the city any taxes thereafter on said property and he did not exercise his right of redemption of the same, but on the 29th day of June, 1939, he executed to the city a quitclaim deed to the property, which was duly recorded in the deed records of Falls county.

In December, 1940, the city began the construction of a building to be used as a public library which was constructed upon tract No. 1, except that one foot on the north corner extended over onto tract No. 2, and upon tract No. 2 the city constructed curbs, sidewalks, set out shrubs and graveled a part of it to be used for parkway space in connection with the library. The school district levied and assessed taxes against tract No. 2 in the name of T. B. Ellsberry for the years 1936, 1937, 1938 and 1939. The fair market value of tract No. 2 on December 22, 1936, was $1,250, and it was in December, 1939, and at the present time of the value of $1,500.

Against tract No. 1 the court gave plaintiffs judgment for the sum of $32.22, representing the taxes, penalty and interest due on said tract for the years 1937, 1938 and 1939; and on tract No. 2 the court per-

mitted the following units to recover the following amounts: The State of Texas the sum of $253.43, the County of Falls the sum of $234.67, being the amount due for the years 1924 to 1927, inclusive, and 1929 to 1938, inclusive; Falls County Road District No. 9 the sum of $4.81, and the School District the sum of $18.94 for the years 1937 and 1938, making a total of $544.07; and foreclosed plaintiffs' constitutional and statutory liens against the two tracts.

The city appealed on one proposition and that is: "The legal title to the property having been acquired by the city of Marlin and the property being now used by the city for public purposes, to wit, a public library, proceedings to collect delinquent taxes by foreclosure of tax liens of appellees are without effect and void and the court erred in awarding appellees judgment against appellant for the amount of their taxes, penalties and interest and foreclosure of their liens."

We are of the opinion that the assignment of error should be sustained. Without constitutional or statutory authority, the State of Texas, nor one or more of its political subdivisions, cannot legally levy, assess or collect taxes from another of its subdivisions on property belonging to such subdivision when such property is being used by it for public purposes, and any proceeding in an attempt to do so is void. This is true even though the lien had attached prior to the acquisition of said property and while the same was privately owned. The state and all of its arms or agents, such as counties, cities, school and road districts, are supported and maintained by and through taxation, and to permit the state, or a unit thereof, to take from the treasurer of the city money for taxes assessed against its public property would be in effect the public taxing itself and the result would simply be the taking of money out of one of its tills and placing it in another, and robbing one to pay the other would not redound to the enrichment of either. The state would gain nothing by selling its own property to collect the taxes due thereon.

The case of State v. Stovall, Tex.Civ. App., 76 S.W.2d 206, 208, writ refused, involved the following facts: The state owned certain real estate located in the Rusk Independent School District in Cherokee county which was under the control of the Texas Prison System and was being used as a part of the same. The state, through its proper officials, in March, 1920, sold said land to L. P. Featherstone, who failed to pay the notes given to secure a part of the purchase price therefor. The state, in July, 1929, recovered judgment for possession and title to said land in a suit filed in the district court of Travis county, and in which the Rusk Independent School District was not made a party. The state thereafter used and occupied said property as part of the Rusk State Hospital. In January, 1929, the school district recovered a judgment against the owners of said land for the sum of $1,631.96 representing delinquent taxes, penalty and interest for the years 1925 to 1929, inclusive, with foreclosure of its tax lien. In April, 1930, the school district caused an order of sale to be issued and placed in the hands of the constable, who levied upon said property and advertised same for sale. The state secured an injunction against the sale of said property, contending that since the state had legal title to said property and the same was being used for a public purpose, all subsequent proceeding to collect such tax by enforcing such lien was without effect and void. This court, speaking through the late Chief Justice Gallagher, said: "The issue of law presented by appellant's contention is apparently one of first impression in this state, but it is supported by the great weight of authority in other jurisdictions. (Citing many authorities). Since the judgment recovered by the appellee Rusk independent school district is for the collection of taxes, and the title to the property against which its judgment of foreclosure was rendered has passed to and vested in the state of Texas, and the same is now being used by it for public purposes, such property is not now subject to seizure and sale to satisfy such judgment."

The case of Childress County v. State et al., 127 Tex. 343, 92 S.W.2d 1011, 1016, involved taxes on four leagues of public free school land situated in Bailey and Cochran counties which the state had granted to Childress county. The commis-

sioners court made a sales contract to transfer this land to certain private individuals, but in 1933 said court cancelled the original contract of sale and declared the same null and void because I. C. Enochs failed to pay the interest installments thereon as they became due. The land was assessed for taxes for the years 1931 and 1932 in the name of Enochs. The taxes became delinquent and the state of Texas recovered judgment against Enochs for the sum of $3,226.42, representing the amount of taxes, penalty, interest and costs for the years 1931 and 1932. The tax lien was declared superior to any lien or right of Childress county and the same was foreclosed against Enochs and Childress county. The Supreme Court, speaking through Judge Sharp, in point 9, said: "While this precise question, so far as we know, has never been determined by this court, we think the great weight of authority sustains the rule that when the title to this land reverted to Childress county, the tax lien for state purposes became merged with the ownership of the land by the county. This property, dedicated to a county exclusively for a public purpose, and having been sold by the county to individuals, who failed to comply with the contract of sale, whereupon the title to the land reverted to the county, cannot be burdened with taxes due the state during the time it was privately owned." And cited State v. Stovall, supra.

The court further held that the land was subject to taxes levied and assessed for county purposes by Cochran county because said land was agricultural school land, and under authority of Section 6a of Article 7 of the Constitution of this state, Vernon's Ann.St., the county of Cochran had a right to levy, assess and collect taxes on the same for such purpose.

To the same effect are the authorities of many foreign jurisdictions. In the case of Halvorsen v. Pacific County, 22 Wash. 2d 532, 156 P.2d 907, 908, 158 A.L.R. 555, point 15, the Supreme Court of Washington held that when property is acquired by state, county, or city, existing tax liens are discharged or merged in the title acquired by the public body and may not be enforced should the property again come into private ownership.

In the case of Foster v. City of Duluth, 120 Minn. 484, 140 N.W. 129, 48 L.R.A., N.S., 707, point 2, the Supreme Court of Minnesota said: "Where real property, acquired by the state or a city for exclusively public purposes, is, when so acquired, subject to a lien for unpaid taxes, all proceedings taken to enforce such lien, after the property is so acquired for public purposes, are void."

In State v. Locke (Village of Springer, Intervener), 29 N.M. 148, 219 P. 790, 30 A.L.R. 407, point 1, the Supreme Court of New Mexico said: "Property which is acquired by the state in its sovereign capacity is thereupon absolved and freed of a further liability for the taxes previously assessed against it, and a subsequent sale thereof for such taxes is void."

In Smith v. City of Santa Monica, 162 Cal. 221, 121 P. 920, the Supreme Court of California said: "Where a city brought an action to condemn land which was sold to the state for taxes prior to judgment of condemnation, the state could not thereafter sell the land and execute tax deeds to an individual, since the lien of the state was merged in the title of the city, holding under trusts for the public, as distinguished from the state, and for the state."

In City of Laurel v. Weems, 100 Miss. 335, 56 So. 451, Ann.Cas.1914A, 159, the Supreme Court of Mississippi said: "In March, 1906, a city purchased a lot upon which taxes for 1906 had been assessed to persons unknown. These were not paid and the lot was sold in March, 1907. Under Code 1906, § 4255, the taxes of 1906 became a lien upon the lot in February of that year. Held that, under Code 1906, § 4251, par. 'c,' exempting from taxation all the property of municipal corporations, the purchase by the city freed the lot from back taxes."

See also Corpus Juris, Vol. 61, p. 945; Danciger v. State, 140 Tex. 252, 66 S.W.2d 914; Mexia Independent School Dist. v. City of Mexia, 134 Tex. 95, 133 S.W.2d 118, 134 A.L.R. 1277; Vernon's Revised Civil Statutes, Art. 7150, secs. 4 and 8.

In view of the many authorities cited herein, we are of the opinion that it is the law of this state that when the legal title to the land in question vested in the

city, that all pre-existing tax liens asserted herein by the plaintiffs became merged with the city's title, and the property now being used for a public purpose, it cannot be subjected to seizure and sale to satisfy such pre-existing tax liens or any tax liens created subsequent to its acquisition.

The judgment of the trial court is therefore reversed and judgment rendered in favor of the city.