Otto WALLIS, Plaintiff-Appellant,

v.

COUNTY OF ST. LOUIS,
Defendant-Respondent,

and

Eugene L. Mueller, Defendant-Appellant.

Nos. 42715, 42721.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 8, 1981.

Michael J. Doster, Chesterfield, for plaintiff-appellant.

Thomas W. Wehrle, County Counselor & Susan A. Pippa, Asst. County Counselor, Clayton, James J. Wilson, Ronald F. Borgmann, Normandy, Robert Jones, Clayton, for defendant-respondent and defendant-appellant.

DOWD, Presiding Judge.

Plaintiff, Otto Wallis, brought an action to quiet title to certain real property located in St. Louis County. Wallis named Eugene Mueller and St. Louis County, among others, in this action. Wallis's petition was initially dismissed by the trial court for failure to state a cause of action. In *Wallis v. St. Louis County,* 563 S.W.2d 93 (Mo.App. 1978) this court held that the petition stated a cause of action under § 527.150 RSMo 1969, and remanded the cause for further proceedings. The cause was subsequently submitted to the trial court on a stipulation of facts and exhibits by the parties to this appeal. The trial court entered judgment quieting title in St. Louis County. Mueller and Wallis thereafter filed separate appeals, which were consolidated by order of this court.

The parties each claim superior title to approximately 70.313 acres of real property. Wallis's claim to this property is based upon a general warranty deed dated in May, 1938, which he argues included a conveyance to him of the 70.313 acres. Wallis contends that in 1939 he conveyed land adjacent to the disputed tract of real property, but retained the 70.313 acres. St. Louis County contends that Wallis did not retain title to the subject property in dispute after the 1939 conveyance. The County argues that it subsequently acquired title to the subject property under two deeds of conveyance dated in December, 1971 and January, 1972. Mueller contends that he has superior title by reason of a collector's deed for taxes for the subject property dated August 31, 1972. Both Wallis and St. Louis County argue that the collector's deed for taxes is void.

We first consider whether or not Wallis retained an interest in the subject property in light of the aforesaid 1939 conveyance. The 70.313 acres of real property in dispute is situated near Creve Coeur Lake in St. Louis County. The parties to this appeal stipulated that at all times relevant to this action Creve Coeur Lake was and is a non-navigable body of water. Wallis's claim to superior title of the subject property is based upon a general warranty deed dated May 6, 1938, in which he was grantee of Lots 2, 4, 5, 9 and 10 of a subdivision of the Madden Tract in St. Louis County. The grantor of this deed was Muckermann Investment Company (hereinafter Muckermann). The description in this deed included the following:

"Lots 2, 4, 5, 9 and 10 of the Subdivision of the Madden Tract, in U.S. Survey 3094, Township 46 North, Range 5 East,

together containing 230.476 acres, according to survey thereof executed by Elbring Surveying Company in November and December 1936, a plat of which survey attached to deed recorded in Book 1413 Page 575 of the St. Louis County Records, is recorded in Plat Book 33 Page 18 of said records, together with all improvements thereon, also any legal accretions thereto which may now exist or may become attached thereto in the future."

To ascertain the property interest of Wallis under this deed it is necessary to examine the property interest of Muckermann who was Wallis's predecessor in title. Muckermann was the grantee of Lots 2, 4, 5, 9 and 10 of the subdivision of the Madden Tract by a general warranty deed dated December 23, 1936. The grantor in this deed was Lake Land and Securities Company. The description in this deed describes the property as two separate tracts, which we summarize as follows:

1. A tract of land and accretions thereto described as Lot 9 and Lot 10 of the subdivision of the Madden Tract in Survey 3094, containing 95.35 acres, of which 25.64 acres lies within the former Creve Coeur Lake as per the survey executed by William Elbring attached thereto;

2. Also, a tract of land and accretions thereto described as Lots 2, 4 and 5 of the Subdivision of the Madden Tract in Survey 3094, containing 231.079 acres, of which 70.313 acres lies within Creve Coeur Lake as per the survey executed by William Elbring attached thereto.

This description, taken together with reference to the Elbring Survey, clearly indicated that the conveyance to Muckermann included the subject property.

In the Elbring Survey, Lots 9 and 10 were depicted as abutting the former Creve Coeur Lake. The Survey specified 69.71 acres abutting the former Creve Coeur Lake and 25.64 acres within the former lake. Lots 2, 4 and 5 were depicted as abutting Creve Coeur Lake. These three lots are adjacent to one another, with Lot 4 situated between Lot 2 and Lot 5. The acreage within these three lots was 160.766 acres, exclusive of the acreage within Creve Coeur Lake. The northern boundary line of Lot 2 and the southern boundary line of Lot 5 extended into Creve Coeur Lake, intersecting with the center line of the lake. The survey indicated that the acreage within this portion of Creve Coeur Lake was 70.313 acres. This area is the subject property in controversy. Lot 4 was separated from Lots 2 and 5 in the survey by dotted lines, but these lines did not extend out into Creve Coeur Lake. The area within Creve Coeur Lake was not separately labeled by section number or lot number.

As noted earlier, the conveyance from Muckermann to Wallis specified Lots 2, 4, 5, 9 and 10, containing 230.476 acres plus "any legal accretions thereto which may now exist or may become attached thereto in the future." This quantity of acreage was identical to the total acreage of real property in Lots 2, 4, 5, 9 and 10 which was outside Creve Coeur Lake or the former Creve Coeur Lake, as depicted in the Elbring Survey and as described in Muckermann's deed from Lake Land and Securities Company.[1]

By general warranty deed dated October 11, 1939, Wallis conveyed real estate to William and Alma Duenke, described as Lots 2, 4, and 5 of the Subdivision of the Madden Tract in Survey 3094, containing 160.766 acres according to the survey made by the Elbring Survey Company. There was no reference to accretions in this deed. Examination of the Elbring Survey shows that the quantity of acreage specified in this deed represented the total acreage of Lots

---

1. As expressed in the Elbring Survey and in the deed from Lake Land and Securities Company to Muckermann, Lots 2, 4, and 5 contained 231.079 acres including 70.313 acres within Creve Coeur Lake. Lots 9 and 10 contained 95.35 acres including 25.64 acres within the former Creve Coeur Lake. Thus, the five lots totaled 326.429 acres including 95.953 acres within Creve Coeur Lake or the former Creve Coeur Lake. Deducting the acreage described as within the lake or former lake from the total acreage of the five lots yields 230.476 acres. Wallis's deed from Muckermann described Lots 2, 4, 5, 9 and 10 as containing 230.476 acres.

2, 4, and 5 which was outside Creve Coeur Lake.[2] Viewing the description in Wallis's deed in conjunction with the Elbring Survey, it is clear that Wallis conveyed a tract of land (described as Lots 2, 4, and 5 ...) abutting Creve Coeur Lake. Similarly, in the deed from Muckermann to Wallis, Muckermann specified a tract of land adjacent to Creve Coeur Lake (which included Lots 2, 4, and 5). The issue is whether the real property depicted within Creve Coeur Lake in the survey was included in one or both of the aforesaid deeds and then retained or conveyed.

▇▇▇ When land is bounded by a nonnavigable lake, the abutting proprietor's title extends to the center of the lake provided the proprietor's grantor had owned to the center of the lake.[3] *Kirkpatrick v. Yates Ice Company*, 45 Mo.App. 335, 338 (1891); *Cochran v. Missouri, K & T Ry. Co.*, 94 Mo.App. 469, 68 S.W. 367, 368 (1902). The owner of land adjoining a non-navigable lake may convey the land while retaining title to the property within the lake. If the description in a deed discloses an intention not to convey to the center of a non-navigable stream or lake, that intention will control. *Cockran v. Missouri, K & T Ry. Co., supra; See Bratschi v. Loesch*, 330 Mo. 697, 51 S.W.2d 69, 72 (1932).

▇▇▇ In the instant case, Muckermann owned to the middle of Creve Coeur Lake by reason of its deed from Lake Land and Securities Company. The deed from Muckermann to Wallis described a conveyance of the land bounded by Creve Coeur Lake. Wallis's deed to the Duenkes also described a conveyance of the land abutting Creve Coeur Lake. We believe these descriptions, examined in conjunction with the Elbring survey referred to in the deeds, were sufficient to convey title to the middle of Creve Coeur Lake notwithstanding the fact that the specified quantity of acreage in each did not include the adjacent 70.313 acres within Creve Coeur Lake. We do not construe the specification of the quantity of acreage situated outside Creve Coeur Lake as an indication of an intention to reserve the lakebed property.[4] Furthermore, our conclusion that there was no intent to reserve the subject property has been reached after giving consideration to the presence or absence of the term "accretions" in the aforesaid deeds. Assuming the doctrine of accretions (or relictions) was applicable to the facts of this case, the absence of words of limitation or any exceptions or reservations as to accretions in Wallis's deed to the Duenkes would result in the conveyance of any accretions to the grantees. *See Bixby v. Backues*, 346 Mo. 955, 144 S.W.2d 112, 115 (1940); *Gorton v. Rice*, 153 Mo. 676, 55 S.W. 241, 243 (1900). The absence of words of limitations or reservations by Wallis results in the application of the principle that the

---

**2.** This deed referred to the Elbring Survey. The survey indicated that the area comprising Lots 2, 4 and 5 and the adjoining portion of Creve Coeur Lake to the center line contained a total of 231.079 acres, of which 70.313 acres was within the lake. Deducting the acreage within Creve Coeur Lake from the total acreage yields 160.766 acres. Wallis's deed to the Duenkes described Lots 2, 4 and 5 as containing 160.766 acres.

**3.** With reference to non-navigable streams where a similar rule applies, it has been noted that the invariable construction to a deed conveying land bounded by a water course is a conveyance to the middle of that non-navigable water course, and that courts do not favor a presumption that a grantor retained title to the bed of the stream. *Whiteside v. Oasis Club*, 187 S.W. 27, 30 (Mo.1916). One reason to construe such a deed against the grantor is due to the difficulty of discerning a rationale for

retaining the bed of a stream while conveying the adjacent land.

**4.** Although different considerations are involved, similar principles have been established with regard to public streets or roads. Absent an express reservation, a conveyance of land bounded on a public highway or street includes the fee to the center of the highway or street. In addition, a description of the land by metes and bounds, giving courses and distances of the boundaries, does not exempt the conveyance from this rule. *McCord v. Rosenthal*, 570 S.W.2d 775, 776 (Mo.App.1978). There has also been recognition of the principle that the specification of a quantity of land which does not include the public way, does not operate to destroy the presumption that the fee to the roadbed was conveyed. *Bay v. Stout Sign Company*, 301 S.W.2d 786, 788–789 (Mo.1957).

grantee would be vested with title to the middle of the lake.

Wallis contends that an intent to reserve the subject property was disclosed by his reference to the Elbring Survey in the 1939 conveyance to the Duenkes. Wallis relies on *Kirkpatrick v. Yates Ice Company, supra,* wherein the court stated, "It may be that a trial will disclose this lake to have been one over which the government surveys by sections have been extended, just as though it was dry land, and that titles have been conveyed with reference to such survey. In such cases, plaintiff's boundary would be confined to the literal terms of his deed." 45 Mo.App. at 339. Wallis argues that his description of Lots 2, 4 and 5 as containing 160.766 acres, with no mention of accretions, together with the reference to the Elbring Survey indicated that he intended to retain the subject property. As noted earlier, the Elbring Survey depicted Lots 2, 4, 5, 9 and 10, showing an area of land and part of Creve Coeur Lake. The area within Creve Coeur Lake which abutted Lots 2, 4 and 5 contained 70.313 acres. The survey does not clearly delineate the area within the lake as a separate section or lot. It merely specified the acreage within the lake and the acreage outside the lake. Under these circumstances, we do not find the above principle in *Kirkpatrick* applicable. Rather, as shown by the Elbring Survey referred to in the deed, Wallis conveyed a tract of land bounded by Creve Coeur Lake. In the deed from Wallis to the Duenkes, we find no intent to retain the subject property within Creve Coeur Lake. Therefore, Wallis's 1939 conveyance to the Duenkes encompassed the 70.313 acres within Creve Coeur Lake, and Wallis did not retain an interest in that property.

The subject property, along with the adjacent land comprising Lots 2, 4 and 5, was conveyed by the Duenkes in 1954 to the Tappmeyers. The Tappmeyers subsequently conveyed this property to St. Louis County through two deeds dated December 22, 1971 and January 4, 1972. These deeds are the basis of St. Louis County's claim to superior title in the subject property. As noted earlier, appellant Eugene Mueller

claimed title to the subject property by reason of a collector's deed for taxes. The subject property was described in a collector's deed for taxes dated August 31, 1972. The only property described in this collector's deed was the approximately seventy acres comprising the subject property in controversy. The grantee in the collector's deed was Leonard Bowman. Bowman conveyed the subject property to Mueller by quitclaim deed dated December 23, 1972.

The collector's deed noted that Bowman had presented a certificate of purchase dated August 28, 1970 for the subject property. The grantor in the collector's deed was the State of Missouri by George C. Leachman the collector of St. Louis County. The stated consideration in the collector's deed was $555.00, which represented the amount of delinquent taxes assessed against the subject property. The collector's deed indicated that taxes for the land had not been paid for several years up to and including 1969. The parties stipulated that the subject property had been carried on the tax records of St. Louis County in the name of Muckermann Investment Company from the 1936 conveyance to Muckermann until August 31, 1972.

■ The collection of delinquent taxes is governed by the Jones-Munger Act. § 140.-010 et seq. Such taxes may be collected by the sale of the land upon which taxes have become delinquent. In the present case, the certificate of purchase dated August 28, 1970, indicated that Bowman purchased the subject property at a public sale after paying the amount of delinquent taxes. The certificate of purchase is not a deed, and does not pass title to the real estate. For a two year period following the date of sale, the owner or any other person having an interest therein, is entitled to redeem the lands that had been sold for taxes. § 140.-340. Legal title remains vested in the record owner for the two year redemption period. During this period, the purchaser at the tax sale holds an inchoate interest in the land. *State ex rel. Baumann v. Mar-*

*burger,* 182 S.W.2d 163, 165–166 (Mo.1944); *Hobson v. Elmer,* 349 Mo. 1131, 163 S.W.2d 1020, 1022 (1942).

Under Article X, Section 6 of the Missouri Constitution, all real property of the state, counties and other political subdivisions is exempt from taxation. In *State ex rel. City of St. Louis v. Baumann,* 348 Mo. 164, 153 S.W.2d 31 (1941) the City of St. Louis purchased land at a tax sale and received a certificate of purchase. The City demanded a deed to the property after a two year period, but the collector refused to execute a deed until the City paid additional outstanding taxes due for the property. The court held that the collector was in error. In view of the exemption provision of the Constitution, the court concluded that the land became immune from taxation as soon as the City became the owner of it, and such immunity extended to taxes assessed and levied prior to the City's acquisition of the property. *Id.,* 153 S.W.2d at 34. *See State v. City of Springfield,* 375 S.W.2d 84 (Mo.banc 1964). Therefore, when St. Louis County acquired title to the subject property by deed from the Tappmeyers, it could not be compelled to pay for the outstanding taxes previously assessed and levied, nor for the taxes levied subsequent to its acquisition.

■ The majority of jurisdictions have concluded that when a governmental entity which is exempt from taxation acquired property after a lien for delinquent taxes has accrued, all proceedings to enforce and collect those taxes are void.[5] Generally, this issue has arisen in cases in which proceedings to collect taxes, including tax sales, were initiated after the tax exempt governmental entity acquired title. In the instant case, the tax sale was made before St. Louis County acquired legal title, but during the time that the purchaser at the

sale held an inchoate interest in the subject property. Thereafter, the collector's deed for taxes was issued to Bowman. The collector apparently was unaware that St. Louis County had acquired title to the subject property during the redemption period by reason of the deeds from the Tappmeyers. We believe the collector's deed for taxes was void. The moment St. Louis County acquired legal title the pre-existing delinquent taxes were not subject to collection. St. Louis County's acquisition under these circumstances would be equivalent to the owner redeeming his lands during the redemption period after they had been sold for taxes owed. We conclude that the collector had no authority to issue the deed for taxes after St. Louis County had acquired title to the subject property, and the tax deed did not pass title to Bowman. It follows that St. Louis County has better title to the subject property than Bowman and his grantee, Mueller.

Mueller contends that the doctrines of equitable estoppel and estoppel by deed prevent the county from denying the validity of the collector's deed and the tax assessments on which it is based. We disagree.

■ It is recognized that generally the doctrine of estoppel is not applicable to acts of a governmental body. *State ex rel. Walmer Investment Co. v. Mueller,* 512 S.W.2d 180, 184 (Mo.App.1974). Also, appellant's sole authority in support of his argument for the application of equitable estoppel, *Rottjakob v. Leachman,* 521 S.W.2d 397 (Mo.banc 1975), involved a good faith purchaser of real property whose title insurance policy showed as paid the real property taxes assessed against the tract which he sought to purchase. The collector's records recorded the taxes as paid. In *Rottjakob, supra,* where there was an innocent purchaser who had acted in good faith the

5. *See Application of County Collector, Etc.,* 79 Ill.App.3d 151, 34 Ill.Dec. 717, 398 N.E.2d 392 (1979); *City of Marlin v. State,* 205 S.W.2d 809 (Tex.App. 1947); *Halvorsen v. Pacific County,* 22 Wash.2d 532, 156 P.2d 907 (1945); *Davis v.*

*City of Biloxi,* 183 Miss. 340, 184 So. 76 (1938); *State v. Locke,* 29 N.M. 148, 219 P. 790 (1923); *Foster v. City of Duluth,* 120 Minn. 484, 140 N.W. 129 (1913).

collector was held estopped from collecting the taxes which were in fact, unpaid. The facts of *Rottjakob, supra* are clearly distinguishable from those of the case at bar in that Bowman was not an innocent purchaser without notice of a prior interest in the subject property. Appellant had notice of a two year redemption period during which time he held an inchoate interest in the subject property and legal title remained vested in the record owner. As such we decline to apply the theory of equitable estoppel against the respondent county.

Furthermore, St. Louis County is not restricted under the doctrine of estoppel by deed from challenging the validity of said collector's deed. Estoppel by deed precludes a party and its privies any right or title in derogation of the deed or from denying the truth of any material fact asserted in it. Mueller argues that this principle should lie in that the county, by acquiring title to the subject property by deed of conveyance subsequent to the issuing of the collector's deed should not now be permitted to deny its legality.

■ Bowman purchased the subject property at a public sale on August 28, 1970 after paying $555.00 in delinquent taxes, and was issued a certificate of purchase. We have already established that the certificate of purchase is not a deed and does not pass legal title, but that said title remains vested in the record owner for the two year redemption period following the date of sale. *State ex rel. Baumann v. Marburger, supra,* § 140.340. The Tappmeyers conveyed the subject property to St. Louis County through two deeds dated December 22, 1971 and January 4, 1972. The collector's deed was not issued until August 31, 1972. Therefore, we conclude that St. Louis County had legal title to the subject property before the issuance of the collector's deed and as such the doctrine of estop-

pel by deed as argued by appellant Mueller cannot lie against respondent county.[6]

Finally, Mueller questions the right of the respondent county to raise the issue of the validity of the collector's deed claiming it is totally outside the scope of the pleadings. Section 527.150 V.A.M.S. which governs quiet title actions states "if same be asked for in the pleadings of either party the court may hear and finally determine any and all rights, claims, interest, lien and demands, whatsoever of the parties ... concerning or affecting said real property and may award full and complete relief whether legal or equitable ..." Also, see Rule 93.-01.

In support of his claim Mueller contends that the pleadings determine the issues to be addressed and that the pleadings of respondent county does not pray that the collector's deed be declared void and be cancelled or that the tax assessments were erroneous. *Lucas v. Smith,* 383 S.W.2d 513, 517 (Mo.1964); *Obermeyer v. Heutschel,* 389 S.W.2d 203 (Mo.1965).

■ The case at bar can be distinguished from these decisions in that the cited cases only speak to the introduction of additional evidence in support of theories not pleaded. St. Louis County by arguing the invalidity of the collector's deed is referring to evidence already before the court as Mueller has obviously placed into evidence the collector's deed as his only source of title.

The petition in this case states, in essence, the title of the plaintiff and asks the court to define and adjudge the title, interest, and estate of the parties in the land. In its answer after a general denial, St. Louis County asks the court for judgment in its favor vesting title to the land stated in the petition, in St. Louis County. Mueller also alleges that he is the owner of the parcel of

---

6. We also note that respondent county is not a party to the said deed. The parties to the deed are the State of Missouri, party of the first part, and Leonard Bowman, party of the second part. The tax lien for which subject property was sold was the State's tax lien, executed by the Collector of St. Louis County as the agent of the State. §§ 137.085 and 140.110 RSMo.

land described in the petition, and requests that title be vested in him. Both answers assert title and ask that it be defined and adjudged. It is clear that so far as the pleadings are concerned the whole issue of title was at stake. In an action to quiet title the court is required to adjudicate the respective interests of the parties to the action entering a judgment in behalf of the parties showing the best title. *Evans v. Brussel*, 300 S.W.2d 442, 444 (Mo.1957); *Stottle v. Brittian*, 459 S.W.2d 310, 313 (Mo. 1970). *See, Mahaffey v. Lebanon Cemetery Association*, 161 S.W. 701 (Mo.1918). Appellant's point is denied.

The judgment is affirmed.

SMITH and STEWART, JJ., concur.