

ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

November 5, 2012

The Honorable Anna Laura Cavazos Ramirez       Opinion No. GA-0973
Webb County Attorney
Post Office Box 420268                         Re: Whether a taxing authority may impose, and
Laredo, Texas   78042-0268                     a county is obligated to pay, penalties and interest
                                               on ad valorem taxes imposed on real property
                                               purchased by a county for the year of sale that
                                               have remained unpaid   (RQ-1063-GA)

Dear Ms. Ramirez:

You ask whether a taxing authority may impose, and a county is obligated to pay, penalties and interest on ad valorem taxes imposed on real property purchased by a county for the year of sale that have remained unpaid.[1] You inform us that several years ago, Webb County (the "County") purchased real property in three separate transactions. Request Letter at 2. In two instances, the prorated amount of the seller's taxes for the year of sale were calculated and deducted from the sale price. *Id.* In each case, ad valorem taxes on the properties for the year of sale were not paid and have remained outstanding. *Id.* You state that all three properties were acquired for and are used for a public purpose. *Id.* You further inform us that Webb County does not dispute owing the "base tax" for each property for the period during the year of sale prior to the date it acquired the property, but does dispute paying penalty and interest imposed after that date. *Id.* Specifically, you ask the following questions:

> 1. Can penalties and interest be imposed as fees which accrued on a delinquent ad valorem tax balance, on a tax-exempt governmental entity?
>
> 2. Is Webb County, the purchaser of real property, in the same position as any other taxpayer or does its tax-exempt status relieve it of any obligation to pay penalties and interest owed as ad valorem delinquent taxes on the property it purchased?

---

[1]Letter from Office of the Webb Cnty. Att'y, Honorable Anna Laura Cavazos Ramirez, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (May 23, 2012), http://www.texasattorneygeneral.gov/opin ("Request Letter").

3. Is a "tax-exempt" status automatically triggered on the day of closing, when Webb County acquired the property, thereby relieving Webb County from paying penalties and interest that accrued after it purchased the property?

4. If one tax-exempt governmental entity can charge another tax-exempt governmental entity penalties and interest based on delinquent ad valorem taxes, what constitutional or statutory authority allows them to do this?

*Id.* at 1–2.

The duty to pay ad valorem taxes constitutes both a personal obligation of the owner and a lien on the property. TEX. TAX CODE ANN. § 32.01(a) (West 2008); *id.* § 32.07(a). The person who owns property on January 1 of the year for which a tax is imposed incurs a personal obligation to pay the tax. *Id.* § 32.07(a). Once the personal obligation attaches, it is not relieved by a subsequent sale or other transfer of the property. *Id.*[2] Further, a seller's failure to pay ad valorem taxes on real property does not render the purchaser personally liable for the unpaid property taxes. *City of San Antonio v. Toepperwein*, 133 S.W. 416, 417 (Tex. 1911). The Tax Code does provide a procedure for a party to become personally liable for ad valorem taxes owed by another, stating that a "person who receives or collects an ad valorem tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the taxing unit and is liable to the taxing unit for the full amount collected plus any accrued penalties and interest on the amount collected." TEX. TAX CODE ANN. § 32.07(d) (West 2008). While you describe two of the transactions as providing Webb County with a credit for prorated taxes, you do not provide sufficient information to determine whether section 32.07(d) applies here. *See* Request Letter at 2.

In addition to a property owner's personal obligation to satisfy outstanding ad valorem tax debts, the property itself can become subject to a statutory tax lien. "On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property . . . ." TEX. TAX CODE ANN. § 32.01(a) (West 2008). Moreover, a delinquent tax generally incurs statutory penalty and interest "as long as the tax remains unpaid." *Id.* § 33.01(a), (c).

Notwithstanding the statutory tax lien authorized by the Tax Code, the Texas Constitution grants an exemption from taxation and forced sale for property that a political subdivision such as a county owns and holds exclusively for public purposes. TEX. CONST. art. XI, § 9. Additionally, the Legislature has granted a tax exemption for property owned by a county and used for public

---

[2]The Tax Code provides a procedure for a person who transfers property to a political subdivision of the state to be relieved of the obligation for ad valorem taxes due in the year of the transfer by the payment of prorated taxes. TEX. TAX CODE ANN. § 26.11 (West 2008). Based on the information provided in your request letter, it appears the sellers of the real property in question did not avail themselves of this procedure. *See* Request Letter at 2.

purposes. TEX. TAX CODE ANN. § 11.11(a) (West Supp. 2012) (providing that, with exceptions not pertinent here, "property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes"); *see also* TEX. CONST. art. VIII, § 2 (authorizing the Legislature to exempt public property used for public purposes from taxation); *see also* TEX. PROP. CODE ANN. § 43.002 (West 2000) (providing that "the real property of a political subdivision of the state [is] exempt from attachment, execution, and forced sale"). With respect to taxes owed when a governmental entity acquires real property from a private party, courts have concluded that one political subdivision "cannot legally levy, assess or collect taxes from another of [the state's] subdivisions on property belonging to such subdivision when such property is being used by it for public purposes . . . even though the lien had attached prior to the acquisition of said property and while the same was privately owned." *City of Marlin v. State*, 205 S.W.2d 809, 810 (Tex. Civ. App.—Waco 1947, no writ); *see also State v. City of San Antonio*, 209 S.W.2d 756, 757–58 (Tex. 1948) (reversing judgment against a city and school district for state and county taxes, penalties, and interest accrued on property acquired and used for public purposes, and holding that the property "was not subject to seizure and sale to satisfy a judgment for taxes levied by the state and county during the time it was . . . privately owned").

Consequently, to answer your first two questions, when a political subdivision acquires property from a private party, and the property qualifies for a constitutional or statutory tax exemption, the exemption generally precludes charging the political subdivision penalties and interest for any outstanding ad valorem taxes. *See Lubbock Indep. Sch. Dist. v. Owens*, 217 S.W.2d 186, 189 (Tex. Civ. App.—Amarillo 1948, writ ref'd) (determining that preexisting city and school district tax lien was suspended by the acquisition of the property by the state but could be enforced once the property was conveyed to a private party); Tex. Att'y Gen. Op. No. JM-1085 (1989) at 17 (determining that penalties and interest on delinquent ad valorem taxes owed on property continued to accrue after title reverted to Veterans' Land Board but that tax lien would be unenforceable while title is with the state).

Your third question asks whether property purchased by a tax-exempt entity acquires tax-exempt status as of the date of closing. Generally, property will be tax exempt when it meets the criteria for a constitutional or statutory exemption. *See Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 843 (Tex. App.—Austin 2004, no pet.) (determining that property with public use became tax exempt on the date that the city became the owner pursuant to the terms of the parties' contract); *A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915–16 (Tex. 1945) (setting forth test for determining public purpose). *See also* TEX. TAX CODE ANN. § 11.11 (West Supp. 2012); *id.* § 11.42(b). While property acquired by a political subdivision may become tax exempt on the date of closing, whether a particular piece of property is tax exempt on a specific date will depend on the details of the transaction and the use of the property for public purposes. You have not provided us with sufficient information to determine whether any particular piece of property was tax exempt on a specific date. Finally, because the tax exemptions discussed above generally do not permit a taxing authority to impose penalties and interest on a tax-exempt political subdivision for delinquent ad valorem taxes, we need not answer your final question.

## S U M M A R Y

When a political subdivision acquires property from a private party and the property qualifies for a constitutional or statutory tax exemption, the exemption generally precludes charging the political subdivision penalties and interest for any outstanding ad valorem taxes.

Whether a particular piece of property acquired by a political subdivision is tax exempt on a specific date will depend on particular facts regarding the property.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chairman, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee